MATTER OF BURCIAGA-SALCEDO

In Exclusion Proceedings

A-12699434

*Decided by Board May 31, 1966*

The absence from the United States of applicant (a returning resident "commuter") for more than 6 months to care for her seriously-ill child, which may be equated with absence as a result of incapacitation by her own illness, did not result in loss of "commuter" status; although her job was filled by another worker during her absence, since she resumed employment in this country within a short time after abatement of the circumstances causing her absence, she is admissible as a returning resident alien "commuter" to continue her employment.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant without a visa.

The special inquiry officer certified to the Board his order requiring applicant's exclusion upon the ground that she was an immigrant without a visa. The applicant will be ordered admitted.

An alien lawfully admitted for permanent residence and who is regularly employed in the United States but resides in foreign contiguous territory is known as a commuter (*Matter of Bailey*, Int. Dec. No. 1546). Some background for the commuter status will help determine the case before us.

For generations prior to the Immigration Act of 1924, native and foreign-born citizens of foreign contiguous territory living there came daily to work in the United States and then returned to their homes. Immediately before the passage of the Immigration Act of 1924, they had been admitted as visitors on the basis of visitor's visas which were valid for a year and were good for successive applications for temporary admission. Passage of the 1924 Act raised a question as to whether a commuter was an immigrant rather than a visitor. The Act termed an alien an immigrant unless he proved he was a nonimmigrant. (An immigrant needed an immigrant visa —it was good for one entry only and could be issued only under restrictions not applicable to the issuance of nonimmigrant visas.)

The nonimmigrant category pertinent to this discussion was that of the alien coming as a temporary visitor for "business". In this category the commuter was administratively first placed, permitting him to follow his regular employment in the United States and reside in foreign contiguous territory. Reluctance to disturb a long-standing custom, and reluctance to affect the delicate balance which existed between the United States and the contiguous countries dictated the decision. However, the pressure of other factors soon brought a change—there was a lack of specific law authorizing the entry of commuters as nonimmigrants, foreign-born citizens of contiguous territories who because of quota limitations could not obtain immigrant visas to enter the United States were, nevertheless, entering daily to work as commuters, and, there was rising unemployment in the United States—these factors gave rise to an administrative ruling that made the entry of commuters more difficult.

In 1927, it was administratively decided that under the 1924 Act an alien coming to work in the United States must be considered as an immigrant. (He could be admitted only if he had an immigrant visa and applied for admission for permanent residence.) Strict enforcement of this ruling would have seriously affected the livelihood of many on both sides of the border, the functioning of border cities, and the existence of friendly relations with the border nations. A compromise arose which followed the form of the law yet permitted a limited continuance of the commuter status. It was to treat the commuter who obtained an immigrant visa as if he lived in the United States although he continued to live in the contiguous territory.

An alien lawfully admitted for permanent residence and domiciled in the United States could be issued a border crossing card which authorized him to make a temporary visit to foreign contiguous territory and to return to his home in the United States without presenting a new visa or other immigration document; therefore, why not require the commuter to obtain an immigrant visa, admit him for permanent residence, issue him a border crossing card, and then permit him, if he did not desire to live in the United States, to return to his home in foreign contiguous territory and to enter the United States daily on his border crossing card on the theory that he was returning from a temporary visit to contiguous territory? This arrangement was adopted in 1927.

There were difficulties in treating a commuter as if he was a domiciled alien. The alien actually domiciled in the United States attempting to enter as a returning resident with a border crossing card after a temporary visit outside the United States lost his right to

reenter unless he established that he at all times maintained the intention of returning to his domicile in the United States. The commuter did not have a domicile in the United States and in many cases had no intention of moving here, was he therefore to be unrestricted in his right to reenter? The administrative solution was to equate employment with domicile. Then whether the commuter was entitled to enter with his border crossing card as a returning resident turned on whether he was employed in the United States and whether he had ever abandoned the intention of working in the United States. This equality of treatment of the commuter and domiciled alien resulted in the ruling that since the domiciled alien lost his right to reenter the United States on a border crossing card if he was absent more than six months, the commuter lost his right to reenter on a border crossing card if he was unemployed for more than six months.

To treat the commuter as if he was a domiciled alien was a necessary if awkward fiction which permitted the practice to continue, but it was at odds with the administrative desire to have commuters make their homes in the United States. Soon rules concerning inspection and entry arose which made the commuter realize that not only would it be more convenient to live in the United States than to commute, but that loss of the right to enter the United States as a commuter could occur without his fault and even despite his intention to retain the right. Thus, the conclusive presumption arose that a commuter unemployed in the United States for more than six months had abandoned his intention to enter as a commuter—he could be readmitted to the United States to work only if he had a new immigrant visa. This conclusive presumption, with one exception, applied even though the commuter had retained the intention to commute and even though he had entered in the meantime to search for employment. This treatment was in contrast to that given the domiciled alien temporarily absent from the United States for more than six months; he, if he had not abandoned the intention to return, could be readmitted as a returning resident upon a waiver of the documentary requirements.

An exception to the conclusive presumption was made in the case of the commuter outside the United States for more than six months because of illness, accident, or pregnancy. With this background in mind, we may consider the facts in the case before us and the precedent decisions.

In May 1961, the applicant, a 35-year-old female alien, a native and citizen of Mexico, was admitted to the United States for permanent residence; she took up residence in El Paso, Texas and became

employed as a domestic. In October 1961 her employer left the area; the applicant moved across the border to Mexico but found another job in the United States and continued entering daily to work as a domestic. In December 1964, she stopped working to care for her two-year-old child who had become ill. In the early part of the following month the child seemed to recover and the applicant went back to work. A few days later the child became seriously ill. The applicant stopped working to care for the child, there being no one else available. Her job was filled by another worker. The child, afflicted with bronchitis and later with hepatitis, was not free from her afflictions until September 1965. In the following month, feeling that the child could be left in the care of others, the applicant sought employment in the United States. On December 14, 1965 she started working with Mrs. Allen and thereafter came in daily to employment as a domestic. On December 22, 1965, she applied to enter to work for Mrs. Allen, but was refused permission by the Service. On December 28, 1965, the special inquiry officer ruled in an exclusion hearing that the applicant had lost her status as a commuter because she had been unemployed for more than six months. He held that the exception which saved the commuter status of an alien unemployed because of illness did not apply to the applicant because, one, it had not been her own illness that incapacitated her for employment and, two, her employment had not been held open for her during the entire period that she had been unemployed.

The earliest published discussion touching the problem is found in an editor's note to *Matter of D—C—*, 3 I. & N. Dec. 519, 526–7 (1949). The pertinent portion of the note follows:

In *Matter of F—*, A–6778564, C. O., Dec. 21, 1949, the Central Office stated: "It is and has been the holding of this Service that an alien of the immigrant commuter class who has been out of employment in the United States for 6 months shall, notwithstanding temporary entries in the interim for other than employment purposes, be deemed to have abandoned his status of residence in the United States (O. I. 110.6). It has been held, however, that 'intention shall govern in such cases to the same extent that it governs in the case of aliens who depart from the United States for other countries after once having been lawfully admitted' (C. O. letter Nov. 16, 1927, 55470/537–A).[1] Thus, interruption of work due to uncontrollable circumstances as serious illness (*Matter of B—*, A–4089813 (C. O. June 26, 1946)), or because of pregnancy (*Matter of McM—*, A–7687230 (C. O. Sept. 8, 1948)), have been held not to result in abandonment of commuter's status.

"In the case under consideration, the appellant was not employed in the United States since September 27, 1948, when he broke his arm, until August 4, 1949, when he took up temporary employment in the United States with his

---

[1] The O. I. (Operation Instruction or Intra Service memorandum) and the C. O. (Central Office of the Service) letter cited contain no additional pertinent information.

brother. He has, however, presented corroborative evidence that he was in-
capacitated during this period until March 6, 1949. Actually, therefore, he
was employable only for a period subsequent to that date and the 6-month
period should begin to toll [sic] thereafter. Since he effected his admission
to the United States on September 4, 1949, a period less than 6 months, it
is concluded that he has not thereby lost or abandoned his commuter's status.
As he is in possession of a valid border-crossing identification card his appeal
will be sustained."

*Matter of B—, supra,* concerned a Canadian citizen who commuted
from 1920 to September 24, 1945 when he became ill; he was bed-
ridden for about six months. Over seven months later (May 12,
1946) he applied for admission as a commuter for the purpose of
resuming his employment. The Service relying on the two rules gov-
erning the cases of commuters (that a commuter out of employment
for six months shall be deemed to have abandoned his status of resi-
dence in the United States and that intention governs to the same ex-
tent that it governs in the case of domiciled aliens who depart for
other countries) held:

* * * It is apparent, then, that when the appellant took ill in September
1945, he did not lose his job with the Pere Marquette Railroad Company.
Having been granted "sick leave" [for the entire period of his illness], he has
remained in the employment of his company and can return to active em-
ployment at any time within the limits of his leave of absence. Nor is there
anything in the record to show that it was the appellant's intention to abandon
his employment or his status as a commuter. Having been employed by the
same company for over 25 years, it is not likely that he intended to make a
change. In fact, he testified that he was kept from his employment solely be-
cause of his illness. Upon a review of all the evidence in this case, it may be
fairly concluded that, despite his physical absence from his employment,
the appellant did not lose his commuter's status and that he is eligible to
resume the same.

*Matter of McM—, supra,* concerned a Canadian citizen who was a
commuter from April 5, 1946 to about November 7, 1947 when she
stopped working because she was expecting the birth of a child. The
alien applied for admission on May 20, 1948 as a returning resident
to work; she was excluded on the ground she had lost her commuter
status and required a new visa to enter the United States. On appeal,
the Service ordered her admitted as a returning resident if she ob-
tained a waiver of documentary requirements. The Service stated:

The facts presented establish that the appellant has not worked in the
United States since November 7, 1947, a period of more than six months, dur-
ing which time she has lived in Canada. However, the facts show that she
gave birth to a child on December 14, 1947 and has been receiving medical
attention for herself and child and could not resume employment although, at
all times, it appears she intended to return to the United States and resume
employment. In the situation, it is found that the appellant did not abandon
her legal residence in the United States by her absence of more than six

months in Canada from November 1947 to about April or May 1948, as her absences were due to her illness and the care of her infant child. *Matter of Williams*, A-4235728 (C.O. 1947); *Matter of James*, A-6398053 (BIA, 1947).[2]

The next published decision touching upon the issues is *Matter of L—*, 4 I. & N. Dec. 454 (C. O. 1951). L—, working for one employer, commuted from 1927 to June 19, 1950 when he became ill; he recovered on December 7, 1950 and when he applied for admission on December 26, 1950 to resume his employment was excluded as having lost his commuter status by being out of work for more than six months. On appeal the Service stated:

* * * The salient points to be considered in determining abandonment of commuter's status are intention and loss of employment. Thus it has been held that a commuter remains entitled to such classification, notwithstanding an absence of 6 months from this country and interruption of his work here for that long, if his employment, job, or position has not been lost and if the interruption was due to such uncontrollable circumstances as serious illness.

* * * His position of employment has not been lost and according to evidence submitted his job is still being held open for him. His absence from this country from June 1950 was due to his serious illness and there was no intention on his part to abandon his commuter's status. The record therefore establishes that applicant has had the status of a permanent resident of the United States for at least seven consecutive years and that he has not abandoned such status. His absence was due to uncontrollable circumstances and he is seeking to enter the United States as a returning resident to resume the employment which is available to him.

The latest published decision is *Matter of M—D—S— & L—G— & W—D—C*, 8 I. & N. Dec. 209 (1958). M—D—S, a native and national of Canada, whose case was considered with two other unrelated cases, entering for permanent residence on November 26, 1957, returned to Canada and for two weeks commuted daily to employment in Detroit, Michigan. She stopped working to be with her husband who was seriously ill; he passed away a few days later. She did not enter for the next nine months because she had lost the services of the housekeeper who cared for her child and was unable to

---

[2] Both opinions are very brief; neither discusses the law. In *Matter of Williams*, the alien commuted to his work from 1923 to October 1946 when a heart attack confined him to his home in Canada. He sought to reenter to resume employment on June 16, 1947. During the entire period of his illness he was carried on sick leave. The Service without stating a reason found him to be a returning resident. In *Matter of James*, the alien commuted to employment for five months to May 1946 then stopped for a reason not shown but perhaps due to her pregnancy since the order authorizing admission in January 1947 as a returning resident states, "It appears that her husband has now succeeded in finding living quarters in the United States and the appellant intended to join him during January 1947, after the birth of her child."

find another. A month after securing a housekeeper, she applied for admission to take employment with either her former employer or another individual, both having solicited her services. The question then arose as to whether she was still a commuter. Making a general review of the commuter situation, the Board citing *Matter of D—C—, supra,* pointed out (at pp. 212–3) that there is a tolling of the six-month period during the disablement of a commuter who had not lost his job. The Board distinguished the cases before it from *Matter of L—, supra,* by pointing out that L— had not lost his job and the aliens had. However, the Board did not treat the aliens as disabled commuters but in each case ordered the aliens excluded on the ground that they had lost commuter status because they had been unemployed for more than six months.

We answer in the affirmative the question as to whether the illness of the applicant's child should excuse her absence from the United States. In the one case discussing the situation it is shown that the illness of a child is an important factor. In *Matter of McM—, supra,* the applicant who had given birth in December but had not applied for admission until the following May was ordered admitted as a commuter, although absent more than six months, on the finding that she had "been receiving medical attention for herself and child" and that her absence was "due to her illness *and the care of her infant child.*" (Emphasis supplied.) Indeed it is clear here that the long and dangerous illnesses of the applicant's child, her duty, and her natural affection created a situation which has effectively incapacitated her for employment as would have either a broken member in her own body or the carrying of the child in pregnancy (see *Mendelsohn v. Dulles,* 207 F.2d 37 (D.C. Cir. 1953); *Matter of M—,* 5 I. & N. Dec. 598). The applicant should therefore be considered as though she were an alien incapacitated by her own illness.

We have seen that the rule as to the disabled commuter is that intention governs to the same extent it does in the case of a domiciled alien (*Matter of F—* footnote at pp. 526–7, 3 I. & N. Dec.). Since the test for the domiciled alien is whether he intended to abandon domicile, the test for the employed commuter who becomes disabled is whether he intended to abandon his employment.

Applicant's admission should be ordered. Within a short time after the disabling circumstances which prevented her from continuing her employment were removed, she resumed employment in the United States. She now desires to enter to continue with her employment.

ORDER: It is ordered that the admission of the applicant as a commuter be authorized.