**Joseph Luis DUNN, Petitioner-Appellant,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellee.**

No. 72-2463.

United States Court of Appeals, Ninth Circuit.

June 27, 1974.

Rehearing Denied Aug. 15, 1974.

William A. Herreras (argued), Ghitterman, Eskin & Herreras, Santa Barbara, Cal., for petitioner-appellant.

William D. Keller, U. S. Atty., Alan W. Peryam, Asst. U. S. Atty. (argued), Los Angeles, Cal., for respondent-appellee.

Before CHAMBERS and SNEED, Circuit Judges, and KING,* District Judge.

## OPINION

SAMUEL P. KING, District Judge:

Petitioner seeks review of a final order of deportation and of the determination of the Board of Immigration Appeals denying his Motion to Reopen the deportation proceedings. Review is authorized by Section 106 of the Immigration and Nationality Act (hereinafter the Act), 8 U.S.C. § 1105a. The Board held that petitioner, a native of the Western Hemisphere, was statutorily ineligible for discretionary relief from deportation as provided in § 245 of the Act, 8 U.S.C. § 1255(c).

The decision of the Board of Immigration Appeals is affirmed.

Two basic questions are raised by the Petitioner. First: whether he is statutorily eligible for relief under § 212(c)

* The Honorable Samuel P. King, United District Judge for the District of Hawaii, sitting by designation.

of the Act, 8 U.S.C. § 1182(c). Second: whether the statutory authority and administrative practice of providing discretionary relief from deportation, in the form of adjustment of status pursuant to § 245 of the Act, to natives of the Eastern Hemisphere and denying such relief to natives of the Western Hemisphere is Constitutional.

Petitioner is a male alien twenty-six years old, a native and citizen of Mexico, who entered the United States as a permanent resident in 1959. He is married to a United States citizen and has a minor child who was born of this marriage.

On April 30, 1969, in a state court of California, Petitioner was convicted of the unlawful possession of marihuana, in violation of § 11530 of the California Health and Safety Code. A judgment was entered on May 23, 1969, committing him to the Director of Corrections for placement. He was sent to the California Rehabilitation Center from which he was released on November 25, 1970.

Subsequently, proceedings were instituted to deport Petitioner pursuant to § 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11),[1] as an alien convicted of any law relating to the illicit possession of marihuana. In an order of the Special Inquiry Officer dated August 7, 1969, Petitioner was found deportable as charged and was ordered to be deported to Mexico.

On September 12, 1969, the Special Inquiry Officer again having the case before him on a Motion for Reconsideration, affirmed his original order. An appeal from the order was dismissed on December 31, 1969, by the Board of Immigration Appeals. Petitioner then made a Motion for Review of the order of deportation to this Court, which was denied on August 30, 1970.

Thereafter, a private bill, on behalf of Petitioner was introduced in the United States Congress. The Immigration Service advised him on March 2, 1972, that Congress had taken adverse action on the bill and granted him until March 20, 1972, to present himself for deportation to Mexico.

On March 9, 1972, Petitioner filed a Motion to Reopen and Stay Deportation Proceedings, which was denied by the Board of Immigration Appeals on May 15, 1972. The Petitioner subsequently filed the instant Petition for Review of the denial by the Board of his Motion to Reopen. He has never left the United States since his original entry.

Petitioner urges that he should be eligible for discretionary relief from deportation under § 212(c) of the Act, 8 U.S.C. § 1182(c),[2] even though he is not technically "returning to the United States after a voluntary departure." In effect Petitioner is requesting advance permission to return to an unrelinquished domicile, despite the fact that otherwise he would be ineligible for admittance under § 212(a)(23), 8 U.S.C. § 1182(a)(23), as an "alien who has been convicted of a violation of . . . any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana."

▮ As petitioner recognizes in his brief, this precise contention was rejected by this court in Arias-Uribe v. Immigration and Naturalization Service, 466

---

1. Section 241(a)(11) provides in relevant part:

    "(a) Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—

    . . . . .

    "(11) is or hereafter at any time after entry has been . . . convicted of a violation of . . . any law or regulation relating to the illicit possession or traffic in narcotic drugs or marihuana."

2. Section 212(c) of the Act provides in relevant part:

    "aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to paragraphs (1)–(25) . . . of subsection (a) of this section."

F.2d 1198 (9th Cir. 1972). We remain persuaded that that case properly interprets the statute.

Petitioner further contends that it is unconstitutional to deny eligibility for an adjustment of alien status under § 245 of the Act, 8 U.S.C. § 1255,[3] to natives of the Western Hemisphere, while no such restriction is placed on natives of the Eastern Hemisphere.

In Harisiades v. Shaughnessy, District Director of Immigration and Naturalization Service, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952) the Court stated that the government's power to terminate its hospitality towards any class of aliens has been asserted and sustained as an essential element of international relations since the question first arose.

Mr. Justice Frankfurter in his concurring opinion in Harisiades notes:

But whether immigration laws have been crude and cruel, whether they may have reflected xenophobia in general or anti-Semitism or anti-Catholicism, the responsibility belongs to Congress. . . . But the underlying policies of what classes of aliens shall be allowed to enter and what classes of aliens may be allowed to stay, are for Congress exclusively to determine even though such determination may be deemed to offend American traditions. . . . (at page 597, 72 S.Ct. at page 523)

It is firmly established that Congress has the power to exclude aliens of a particular race from the United States, prescribe the terms and conditions upon which certain classes of aliens may come to the country, establish regulations for sending out of the country such aliens as come here in violation of law and commit the enforcement of such provisions to the appropriate executive officers. *See* Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L. Ed.2d 534 (1971); Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893); Uribe-Temblador v. Rosenberg, 423 F.2d 717 (9th Cir. 1970); Talanoa v. Immigration and Naturalization Service, 397 F.2d 196 (9th Cir. 1968).

The Immigration and Nationality Act of 1952 originally provided in § 101(a)(27)(C) that a nonquota immigrant included:

(C) an immigrant who was born in Canada, the Republic of Mexico, the Republic of Cuba, the Republic of Haiti, the Dominican Republic, the Canal Zone, or an independent country of Central or South America, and the spouse or child of any such immigrant, if accompanying or following to join him;

This section conferred a benefit on the majority of Western Hemisphere countries in that they were free from immigration quotas imposed on most other countries.

Section 245 of the Act of 1952 was a method of balancing the equities be-

---

3. Section 245 of the Act provides in relevant parts:

"(a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available at the time of his application.

. . . . .

(c) The provisions of this section shall not be applicable to any alien who is a native of any country of the Western Hemisphere. . . ."

tween quota and nonquota countries by withholding benefits of adjustment of status from those entitled to nonquota status as natives of Western Hemisphere countries.

Legislation enacted in 1958 eliminated preclusion of adjustment of status for Western Hemisphere natives and instead withheld this remedy from natives of contiguous countries and adjacent islands.[4]

In 1960 expansion of statutory benefit was accomplished by an amendment which made adjustment of status available to all aliens, except those entering as alien crewman, who were inspected by immigration officers and admitted or paroled into the United States.[5]

Section 245(c) of the Act takes its present form from the 1965 Amendment restoring the original bar of adjustment of status for natives of Western Hemisphere countries and adjacent islands.[6] Congress was concerned that the Immigration and Naturalization Service had serious recurring problems in processing an increasing number of natives of Central and South America, who came to the United States as nonimmigrant visitors and promptly sought permanent residence under § 245 of the Act.[7]

As noted above, the provision presently under attack is well within the power of Congress. There is a rational basis for the distinction between aliens from the Eastern Hemisphere and aliens from the Western Hemisphere for purposes of relief from deportation pending adjustment of status. Further inquiry into the rationale of § 245 of the Act by this Court is not required.

Affirmed.

---

4. Section 245(c), Act of 1952, 8 U.S.C. § 1255(c) as amended by the Act of August 21, 1958, 72 Stat. 699.

5. Section 245(c), Act of 1952, 8 U.S.C. § 1255(c) as amended by the Act of July 14, 1960, 74 Stat. 505.

6. Section 245(c), Act of 1952, 8 U.S.C. § 1255(c) as amended by the Act of October 3, 1965, 79 Stat. 919.

7. S.Rep.No.748, 89th Cong., 1st Sess., p. 3343 (1965).