Lolita I. ALVAREZ, Petitioner-Appellee,

v.

DISTRICT DIRECTOR OF the U. S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellant.

No. 75–3076.

United States Court of Appeals,
Ninth Circuit.

July 7, 1976.

Rehearing Denied Sept. 8, 1976.

Harold J. Hughes, Asst. U. S. Atty. (argued), Los Angeles, Cal., for respondent-appellant.

William Lew Tan (argued), Los Angeles, Cal., for petitioner-appellee.

OPINION

Before WRIGHT and CHOY, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

This appeal by the United States Immigration and Naturalization Service (INS) from a decision of the United States District Court for the Central District of California granting a writ of *habeas corpus* and allowing appellee, Lolita Alvarez, to remain in this country calls into question a forty-nine-year practice recently approved by the United States Supreme Court in *Saxbe v. Bustos,* 419 U.S. 65, 95 S.Ct. 272, 42 L.Ed.2d

* Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

231 (1974). Since 1927, under the Bureau of Immigration's General Order No. 86[1] and later the Immigration Act of 1952,[2] the INS has allowed "commuter aliens"—citizens of Mexico and Canada who are employed in the United States—to enter this country, daily or seasonally, with only an I–151 registration card ("green card") for identification. Granted "special immigrant" status under 8 U.S.C. § 1101(a)(27)(B), commuter aliens are exempt from ordinary visa and quota requirements.

An immigration judge determined that appellee was not a special immigrant and was deportable under 8 U.S.C. § 1182(a)(20) as an alien not in possession of a valid immigration visa or other entry document. Reviewing that decision on appellee's petition for a writ of *habeas corpus,* the district court found that appellee was a special immigrant under the holding of *Saxbe v. Bustos* and the Ninth Circuit Decision in *Gooch v. Clark,* 433 F.2d 74 (9th Cir. 1970), *cert. denied sub nom. Gooch v. Mitchell,* 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971), which was approved in *Saxbe.* The district court granted appellee special immigrant status even though she is not employed in the United States, does not commute from a contiguous country, maintains no permanent residence in the United States, and spends the major portion of each year in her home in the Philippines. The district court also found that the immigration judge's decision was "arbitrary, capricious and contrary to law".

We disagree with the district court's construction of the special immigrant provision of the immigration law and the applicability of *Saxbe v. Bustos* to the facts in this case. We conclude that appellee is not a special immigrant and should be deported, and we reverse the court below because it exceeded the scope of its review in granting her petition for a writ of *habeas corpus* and erred in substituting its findings of fact for those of the immigration judge.

I.

Appellee is a forty-eight year old, single citizen and native of the Philippines. She first entered the United States as a permanent resident in September, 1968, with a third preference immigrant visa granted on the basis of her profession as a pharmacist. She remained for approximately two years, during which time she did not work as a pharmacist and did not apply for a professional license. From 1968 to 1970 appellee did not own a home in the United States, although she purchased a lot for investment and speculation purposes, opened a savings account, and paid income tax. She has never relinquished her employment in the Philippines, but took a leave of absence during her first American stay and when she last applied for admission in 1973.

After leaving the United States in 1970, appellee remained in the Philippines for eleven months. She returned to this country, visiting friends, for two or three months, during which time she did not work. Appellee came to the United States for the third time in November, 1972. She stayed for one week and then returned to the Philippines. As in 1971, she entered through Hawaii and submitted only her green alien registration card for identification.

On November 17, 1973, appellee again applied for admission to the United States at Honolulu as a returning permanent resident. She presented her green card to the immigration inspector with no other entry documents. The immigration inspector

---

1. General Order No. 86 reclassified commuters as "immigrants". This reclassification and the administrative treatment of the commuter's daily journey as a return from a temporary visit abroad placed commuters within the statutory definition of "nonquota immigrants" under the Immigration Act of 1924, ch. 190, § 4(b), 43 Stat. 153, 155. Thus, General Order No. 86 created a class of immigrants who did not reside in the United States, but who were given the same status and privileges under the immigration laws as those who did. H. Bolen II and D. Tenzer, *The Alien Commuter After Saxbe v. Bustos,* 8 U.C.D.L.Rev. 33, 36 (1975).

2. Immigration and Nationality Act, ch. 477, 66 Stat. 163 (codified, with amendments, in 8 U.S.C. § 1101 *et seq.* (1970)).

thought she might be excludable under 8 U.S.C. § 1182(a)(20) as an immigrant not in possession of a valid immigration visa or other entry document. Her inspection was deferred until a hearing before an immigration judge. She was paroled into the United States and the parole was cancelled in December, 1973.

After a hearing at which appellee was represented by counsel, Immigration Judge Newton T. Jones ordered appellee deported as an immigrant without valid entry documents. The immigration judge found that appellee had abandoned her residence in the United States and was not returning to this country after a temporary visit to the Philippines. On the contrary, he found that she resides in the Philippines and has actually been visiting the United States temporarily every year since 1970 to preserve her permanent residence status.

The Board of Immigration Appeals dismissed appellee's appeal in February, 1975. She subsequently filed a petition for a writ of *habeas corpus* in the United States District Court for the Central District of California to review the final order of exclusion entered by the immigration judge. Jurisdiction was based on 8 U.S.C. § 1105a(b). The district court granted the writ and entered judgment on March 25, 1975; at the same time, the court remanded the case to the INS for reconsideration. The INS filed a notice of appeal to this Court.

This appeal raises three issues:

1. Is the decision in *Saxbe v. Bustos* applicable to a citizen of the Philippines who maintains a permanent home and job in the Philippines and visits the United States for a short period each year?

2. Does the Equal Protection Clause of the Constitution require that the *Saxbe v. Bustos* decision be extended to citizens of countries other than those contiguous to the United States?

3. On review of an action by the INS, may a district court substitute its own findings for the findings of an immigration judge?

## II.

A "special immigrant" is defined in 8 U.S.C. § 1101(a)(27)(B) as "an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad". An earlier subsection of Section 1101 defines the term "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed". 8 U.S.C. § 1101(a)(20). Under 8 U.S.C. § 1182(c), a "special immigrant" is allowed to enter the United States carrying only an I-151 alien registration card and is not subject to visa or quota requirements.

Both *Saxbe v. Bustos, supra,* and *Gooch v. Clark, supra,* were concerned with accommodating the long-standing INS practice of admitting daily and seasonal workers from Canada and Mexico as special immigrants to the requirements of the immigration statute. The primary difficulty in fitting commuter aliens into the special immigrant definition was the requirement that they be returning from a "temporary visit abroad", since they were actually traveling from their unrelinquished homes each night or each season. However, the Supreme Court in *Saxbe* looked at the grant of special immigrant status for commuter aliens as a gloss on the statutory language of Section 1101(a)(27)(B), based largely on policy reasons behind allowing workers free access across this country's borders. Specifically, the Court pointed to the national desire to maintain friendly relations with Canada and Mexico and to avoid burdening border communities in the United States with immigrants who, without the special status, would be forced to settle in this country to retain their jobs.

The long-standing policy approved in *Saxbe* as a gloss on the immigration laws had always been narrowly interpreted. Commuter status had been limited to workers from Canada and Mexico because of the economic and political reasons underlying the INS practice. For instance, in *Matter*

*of Burciaga-Salcedo,* 11 I. & N. Dec. 665 (1966), the immigration authority defined a commuter as: (1) an alien lawfully admitted for permanent residence, (2) regularly employed in the United States (for this purpose, employment was equated with domicile), and (3) residing in foreign contiguous territory. *See also, Matter of L.,* 4 I. & N. Dec. 454, 455 (1951); *Matter of Wighton,* 13 I. & N. Dec. 683, 685 (1971).

■ Thus, *Saxbe v. Bustos, supra,* and *Gooch v. Clark, supra,* deal with a particular group of immigrants which has been given special consideration by immigration authorities since 1927. Appellee is not a member of that group. First, she does not come to the United States to work. Second, she does not commute daily or seasonally. Her yearly trips to the United States are for the avowed purpose of keeping her alien registration card current. Third, her home is not in a country contiguous to the United States, a prerequisite of alien commuter status.

■ Appellee claims that this third requirement violates the Equal Protection Clause of the Constitution since it treats different classes of aliens in different ways. However, it is clear that classifications made under the immigration laws need only be supported by some rational basis to fulfill equal protection guarantees. *Noel v. Chapman,* 508 F.2d 1023 (2d Cir. 1975); *Dunn v. Immigration and Naturalization Service,* 499 F.2d 856 (9th Cir. 1974). The policy considerations articulated in *Saxbe v. Bustos, supra,* support special treatment for commuters from Canada and Mexico who are employed in the United States. We find no equal protection violation.[3]

### III.

■ In support of the district court's grant of *habeas corpus* relief, appellee claims that she falls within the statutory

definition of special immigrant without the gloss added by *Saxbe* and *Gooch.* Clearly, an immigrant need not be a commuter alien to warrant special immigrant treatment. However, to fit within the statutory definition, appellee must show that she is lawfully admitted for permanent residence and returning from a temporary visit abroad.

Appellee fits the first condition as it is interpreted by *Saxbe.* In that case, the Supreme Court held that an immigrant is not required to maintain a permanent residence in the United States in order to have permanent residence status. It is undisputed that appellee was accorded the status of permanent residence in 1968 when she first entered this country with a third preference visa. There is nothing in the record to show whether that status has changed.

■ The status of being "lawfully admitted for permanent residence" carries with it certain privileges—a privilege to remain in the United States indefinitely, a privilege to work in the United States, a privilege to reside permanently in the United States if one chooses, and a privilege to make temporary visits abroad. Appellee has chosen not to remain in the United States, not to work in the United States, not to reside permanently in the United States, and to take extended visits abroad to the country of her birth. Appellee cannot both reside in the Philippines, as found by the immigration judge, and have her trips to the Philippines considered temporary visits abroad. In order to exercise the privilege of leaving temporarily an alien must have a United States residence on return. In effect, the privileges granted to permanent residents coincide: an alien can leave temporarily if he or she has a United States residence to which he or she can return; but if an alien chooses not to have a permanent residence, he or she cannot leave temporarily and reenter as a special immigrant. This analysis is required by INS regulations interpreting its

---

**3.** Appellee's argument that alienage is a suspect classification which triggers strict scrutiny under the equal protection clause is simply incorrect. Strict scrutiny is required when aliens as a class are treated differently from citizens solely because of alienage. *Sugarman* *v. Dougall,* 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). It does not apply when classifications are made among aliens. *Dunn v. Immigration and Naturalization Service,* 499 F.2d 856 (9th Cir. 1974).

special immigrant provision which states that an I–151 alien registration card is sufficient for "an immigrant alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding one year".[4]

Further, appellee's visits to the Philippines cannot be considered temporary. She spends more than eleven months each year in the Philippines. She was employed there to increase her retirement annuity. In *Lesto v. Day*, 21 F.2d 307 (2d Cir. 1927), the court concluded that in order for a visit abroad to be considered temporary, an immigrant must maintain a domicile in the United States and must show an intention to return to the United States in a short time. Appellee fills neither of these conditions. Since she was not returning from a temporary visit abroad on her arrival in Honolulu in 1973, but was rather entering the United States for a visit from her permanent residence in the Philippines, she was not entitled to enter this country as a special immigrant with only her green alien registration card. For that reason, the immigration judge was correct in finding that she had abandoned her residence in the United States, that her home was the Philippines, and that she was deportable as an alien not in possession of a valid immigration visa or other entry document.

## IV.

The decision of Immigration Judge Jones is fully supported by reasonable, substantial, and probative evidence. Therefore, the administration judge's decision is binding on the reviewing court. *Soo Yuen v. Immigration and Naturalization Service,* 456 F.2d 1107 (9th Cir. 1972); *Armstrong v. Immigration and Naturalization Service,* 445 F.2d 1395 (9th Cir. 1971). The district court was not called upon to substitute its fact-finding powers for those of the administrative agency but rather to insure that the administrative decision was not arbitrary, capricious, or contrary to law and was reached with proper regard for procedural requirements. *Loza-Bedoya v. Immigration and Naturalization Service,* 410 F.2d 343 (9th Cir. 1969); *Tejeda v. Immigration and Naturalization Service,* 346 F.2d 389 (9th Cir. 1965).

Although the findings of the district court stated that the administrative decision was "arbitrary, capricious and contrary to law", there is no evidence in the record to support such a statement. Appellee was given the opportunity to testify at the hearing and was represented by counsel. On the basis of her testimony and various exhibits, the immigration judge reasonably concluded that she had abandoned her residence in the United States and was no longer eligible for special immigrant treatment.

The district court ′clearly exceeded the scope of its review in overruling the findings of the immigration judge and substituting its own. Moreover, the findings substituted by the district court were simply those submitted by appellee's attorney with no changes made by the court.[5] The internal inconsistency of the district court's findings added to the procedural confusion in this case, since the district court granted the writ of *habeas corpus* based on *Saxbe v. Bustos, supra,* and *Gooch v. Clark, supra,*

---

**4.** 8 C.F.R. § 211.1(b)(1).

**5.** In this connection we are reminded of Judge Frank's oft-quoted admonition to trial judges that "mechanical" adoption of proposed findings be avoided:

"We stress this matter because of the grave importance of fact-finding. * * * * * * The trial court is the most important agency of the judicial branch of the government precisely because on it rests the responsibility of ascertaining the facts. When a federal trial judge sits without a jury, that responsibility is his. And it is not a light responsibility since, unless his findings are 'clearly erroneous,' no upper court may disturb them. To ascertain the facts is not a mechanical act. It is a difficult art, not a science. It involves skill and judgment. As fact-finding is a human undertaking, it can, of course, never be perfect and infallible. For that very reason every effort should be made to render it as adequate as it humanly can be." *United States v. Forness*, 125 F.2d 928, 942–943 (2d Cir. 1942).

and at the same time, remanded the case to the INS for reconsideration in light of *Saxbe* and *Gooch*. There was no need for a remand after the writ of *habeas corpus* had been granted.

We hold that the immigration judge correctly interpreted the special immigrant provision of the law and correctly ruled that appellee should be deported to her home in the Philippines. Accordingly, we reverse and remand the case to the district court for entry of judgment of deportation against appellee.