UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan BARAJAS–GUILLEN,
Defendant–Appellant.

No. 79–1678.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1980.

Decided Oct. 2, 1980.

Rehearing Denied Nov. 21, 1980.

---

Michael D. Abzug, Deputy Federal Public Defender, Los Angeles, Cal., for defendant–appellant.

J. Michael Dwyer, Los Angeles, Cal., for plaintiff–appellee.

Before WALLACE and SCHROEDER, Circuit Judges, and CORDOVA,* District Judge.

* Honorable Valdemar A. Cordova, United States District Judge, District of Arizona, sitting by designation.

1. 8 U.S.C. § 1326 provides:
 Any alien who–
 (1) has been arrested and deported or excluded and deported, and thereafter
 (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

WALLACE, Circuit Judge:

Barajas–Guillen appeals his conviction for reentering the United States without permission of the Attorney General after being deported, in violation of 8 U.S.C. § 1326 (1976).[1] We affirm.

I

On November 25, 1977, Barajas–Guillen, a Mexican national, appeared before an immigration judge in Chicago, Illinois, to show cause why he should not be deported for illegally entering the United States. During the hearing, Barajas–Guillen admitted that he had entered the United States without presenting himself for inspection and lawful admittance to an officer of the United States Immigration and Naturalization Service, see 8 U.S.C. § 1251(a)(2) (1976), and further admitted his deportability. The immigration judge then asked Barajas–Guillen if he wished to apply for discretionary relief from deportation, through voluntary departure. The immigration judge explained that to be eligible for voluntary departure an alien must have sufficient funds to leave the United States immediately, and have been of good moral character for the previous five years. 8 U.S.C. § 1254(e) (1976).[2] Barajas–Guillen replied that he could not apply for discretionary relief because he had no money. He was subsequently deported through El Paso, Texas, on December 1, 1977.

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

2. 8 U.S.C. § 1254(e) states:
 The Attorney General may, in his discretion, permit any alien under deportation proceedings, other than an alien within the provisions of [certain classes of offenders enumerated in 8 U.S.C. § 1251(a)] . . ., to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection.

Sometime after his deportation, Barajas–Guillen reentered the United States without inspection or the required advance consent of the Attorney General. He was discovered in the United States and arrested on June 26, 1979, and later convicted of violating 8 U.S.C. § 1326.

## II

To prove a violation of 8 U.S.C. § 1326, "the Government must prove beyond a reasonable doubt that the defendant 'illegally entered the United States after being deported according to law.'" *United States v. Gasca–Kraft*, 522 F.2d 149, 152 (9th Cir. 1975), *quoting Pena–Cabanillas v. United States*, 394 F.2d 785, 789 (9th Cir. 1968). Barajas–Guillen claims that his prior deportation was not according to law because the statutory scheme pursuant to which he was deported violated his Fifth Amendment right to equal protection of the laws.[3] He asserts that section 1254(e) discriminates unconstitutionally against two different classes of aliens: indigent aliens and indigent aliens who are "under deportation proceedings" within the meaning of section 1254(e).

Section 1254(e) provides the Attorney General with discretion to permit any alien "under deportation proceedings," who has been of good moral character for at least five years, to depart voluntarily from the United States at his own expense in lieu of deportation. A condition of such voluntary departure is that the alien demonstrate the ability to leave the United States at his own expense. 8 C.F.R. § 244.1 (1980). Barajas–Guillen first urges that granting voluntary departure only to those aliens capable of paying for their transportation out of the country discriminates unconstitutionally against indigent aliens.

Barajas–Guillen's second contention is that the statutory scheme unconstitutionally discriminates against indigent aliens who are "under deportation proceedings," and therefore are covered by section 1254(e), in favor of aliens who depart prior to the commencement of deportation proceedings. 8 U.S.C. § 1252(b) (1976)[4] provides the Attorney General with discretion to forego deportation proceedings for any alien who (1) admits his deportability, (2) is not in the criminal, subversive, narcotic offender, or immoral classes of deportable aliens, and (3) can depart the United States at his own expense. The last requirement may be waived, however, if the Attorney General determines that the alien's voluntary departure at government expense is "in the best interest of the United States." 8 U.S.C.

---

**3.** "[T]he Due Process Clause of the Fifth Amendment forbids the Federal Government from denying equal protection of the laws." *Vance v. Bradley*, 440 U.S. 93, 94 n.1, 99 S.Ct. 939, 942 n.1, 59 L.Ed.2d 171 (1979); *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976). *See also Hampton v. Mow Sun Wong*, 426 U.S. 88, 100, 96 S.Ct. 1895, 1903, 48 L.Ed.2d 495 (1976) (although equal protection analysis under Fifth and Fourteenth Amendments is of "same type," at least in immigration areas respective Amendments' protections are "not always coextensive").

Barajas–Guillen also asserts, without developing an argument or citing authority, that his prior deportation violated his right to "substantive due process." Since Barajas–Guillen has not properly presented the point, we need not speculate as to his possible argument. We observe, however, that to the extent a substantive due process challenge would parallel the "fundamental rights" branch of equal protection analysis, the holding in *Castillo–Felix v. I. N. S.*, 601 F.2d 459, 467 (9th Cir. 1979), would appear dispositive.

**4.** 8 U.S.C. § 1252(b) states, in part:

In the discretion of the Attorney General, and under such regulations as he may prescribe, deportation proceedings, including issuance of a warrant of arrest, and a finding of deportability under this section need not be required in the case of any alien who admits to belonging to a class of aliens who are deportable under section 1251 of this title if such alien voluntarily departs from the United States at his own expense, or is removed at Government expense as hereinafter authorized, unless the Attorney General has reason to believe that such alien is deportable under [certain] paragraphs . . . of section 1251(a) of this title. If any alien who is authorized to depart voluntarily under the preceding sentence is financially unable to depart at his own expense and the Attorney General deems his removal to be in the best interest of the United States, the expense of such removal may be paid from the appropriation for the enforcement of this chapter.

§ 1252(b). Thus, while aliens who are deported "under deportation proceedings" must demonstrate the financial ability to depart at their own expense in order to qualify for voluntary departure, deportable aliens who depart prior to such proceedings may, in the Attorney General's discretion, be granted voluntary departure at government expense. Barajas–Guillen claims that the distinction between aliens under deportation proceedings and those who depart prior to such proceedings is unconstitutional.

## III

The threshold question pertains to the nature of our review. The scope of judicial inquiry into immigration legislation is exceedingly narrow. The Supreme Court has emphasized that " 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977), *quoting Oceanic Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909).

■ We have held that classifications among aliens made pursuant to the immigration laws "need only be supported by some rational basis to fulfill equal protection guarantees." *Alvarez v. District Director, U. S. I. N. S.,* 539 F.2d 1220, 1224 (9th Cir. 1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 596 (1977). *See id.* at 1224 n.3; *Dunn v. I. N. S.,* 499 F.2d 856, 859 (9th Cir. 1974), *cert. denied,* 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 801 (1975). Although the Supreme Court has never explicitly described the standard for reviewing immigration–law classifications among aliens as a rational basis test, the Court has stated that "it is not the judicial role in cases of this sort to probe and test the justifications for the legislative decision." *Fiallo v. Bell, supra,* 430 U.S. at 799, 97 S.Ct. at 1481 (footnote omitted). The Court also said in *Fiallo* that "legislative distinc-

tions in the immigration area need not be as ' "carefully tuned to alternative considerations," ' *Trimble v. Gordon, ante,* at 772 [430 U.S. 762, 772, 97 S.Ct. 1459, 1466, 52 L.Ed.2d 31 (1977)] (quoting *Mathews v. Lucas,* 427 U.S. 495, 513, 96 S.Ct. 2755, 2766, 49 L.Ed.2d 651 (1976)), as those in the domestic area." *Id.* at 799 n.8, 97 S.Ct. at 1481 n.8. We conclude that our use of the rational–basis standard of review in *Alvarez* and *Dunn* is consistent with the Supreme Court's approach as reflected in the quoted language.

Barajas–Guillen, however, offers two reasons why the classifications made in section 1254(e) must be subjected to strict judicial scrutiny instead of the rational–basis test. First, he contends that section 1254(e) touches on the "fundamental right" of avoiding involuntary deportation. Second, he urges that section 1254(e) discriminates against a suspect class, because it classifies on the basis of wealth. *Cf. San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 18–40, 93 S.Ct. 1278, 1288–1300, 36 L.Ed.2d 16 (1973) (either "fundamental right" or suspect classification triggers strict scrutiny). We find that neither contention has merit.

■ We have held that a permanent resident alien's interest in remaining in the United States is not a "fundamental right" triggering strict scrutiny of classifications that affect deportability. *Castillo–Felix v. I. N. S.,* 601 F.2d 459, 467 (9th Cir. 1979). The interest found insufficient in *Castillo–Felix* –that of remaining permanently in the United States–is clearly of greater magnitude than the interest in being afforded a limited period[5] during which to depart voluntarily before being forcibly ejected. Barajas–Guillen points out that in his case the denial of voluntary departure resulted eventually in his imprisonment for violating 8 U.S.C. § 1326 by illegal reentry. But the issue before us is whether the underlying deportation–which itself involved no imprisonment beyond that necessary to assure custody pending deportation–

5. In most cases, a grant of voluntary departure is subject to a 30-day time limitation. 8 C.F.R. § 242.5(a)(3) (1980).

touched a "fundamental right." Every deported alien is subject to potential liability under section 1326 if he reenters this country illegally. That Barajas–Guillen's subsequent illegal reentry transformed his potential liability under section 1326 into actual liability does not distinguish his interest in avoiding deportation from the interest found wanting in *Castillo–Felix*. Thus, section 1254(e)'s restrictions on voluntary departure do not involve a "fundamental right."

 It is equally plain that section 1254(e)'s focus on an alien's ability to pay his expenses of voluntary departure does not create a "suspect classification" which demands strict scrutiny. Classifications based on wealth are suspect only when (1) individuals are completely unable to pay for some desired benefit because of their impecunity, and (2) as a consequence, they sustain "an absolute deprivation of a meaningful opportunity to enjoy that benefit." *San Antonio School Dist. v. Rodriguez, supra*, 411 U.S. at 20, 93 S.Ct. at 1290; *Ybarra v. City of Town of Los Altos Hills*, 503 F.2d 250, 253–54 (9th Cir. 1974). The benefit at issue in section 1254(e) is voluntary departure. The immigration laws, however, do not absolutely deprive indigent aliens of this opportunity. Prior to the institution of deportation proceedings, qualified aliens may seek voluntary departure at government expense pursuant to section 1252(b). In this regard, the Attorney General is entrusted with a wide range of discretion to determine eligibility for voluntary departure. *Cuevas–Ortega v. INS*, 588 F.2d 1274, 1278 (9th Cir. 1979). The Attorney General's exercise of discretion whether to grant voluntary departure at government expense in such cases does not depend upon a deportable alien's wealth; indeed, section 1252(b) explicitly provides for voluntary departure at government expense if the Attorney General deems it in the best interests of the United States. The Attorney General is thus empowered to ease the burden on deserving indigent deportable aliens by foregoing deportation proceedings and then furnishing the expenses of voluntary departure.

It is true that voluntary departure is often precluded for the class of indigent aliens "under deportation proceedings." But the chief distinguishing characteristic of this class is that, in the judgment of the Attorney General, its members' immigration-law violations are egregious enough to have required formal deportation proceedings. The class members' ineligibility for voluntary departure thus stems as much from culpability as from poverty. Under these circumstances, indigent aliens are not absolutely deprived of voluntary departure on grounds of impecunity. Section 1254(e) therefore does not affect a suspect class.

### IV

 In applying the appropriate constitutional test, the government asserts that the rational basis for the classifications made in sections 1252(b) and 1254(e) is that they save the government money. The general rule under both sections 1252(b) and 1254(e) is that the alien must either pay his own expenses of voluntary departure or suffer involuntary deportation. This provides aliens who can afford to pay their own expenses with an incentive to do so; the result is a net savings to the government.

Many indigent aliens, however, cannot act upon this incentive. For some of these aliens–those allowed to depart voluntarily pursuant to section 1252(b) prior to the institution of deportation proceedings–Congress has given the Attorney General discretion to have the government pay the costs of voluntary departure. But Congress has apparently decided that it will finance voluntary departure for only those aliens whose immigration offenses are mild enough to permit dispensing with deportation proceedings. In this respect, Congress is quite rationally furnishing a benefit only to those who most deserve it. Differentiating according to an offender's culpability is surely a rational classification in determining an appropriate punishment for an immigration violation.

Barajas–Guillen raises two contentions in response to these rationales for the chal-

lenged classifications. First, he argues that the legislative history of the challenged provisions discloses no discussion of financial considerations. Second, he suggests that in the case of aliens under deportation proceedings pursuant to section 1254(e), the costs of involuntary deportation might well exceed the cost of a voluntary departure at government expense. In support of this second contention Barajas–Guillen produced some statistical evidence.

If a strict scrutiny standard of review were being applied, these contentions might have merit. But, under the rational basis test, it is constitutionally irrelevant whether the justification proffered by the government was in fact the reasoning that generated the legislative classification. *Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Similarly, " '[t]he State is not compelled to verify logical assumptions with statistical evidence.' " *Vance v. Bradley*, 440 U.S. 93, 110 n.28, 99 S.Ct. 939, 950 n.28, 59 L.Ed.2d 171 (1979), *quoting Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976).

Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this "perfection is by no means required." *Phillips Chemical Co. v. Dumas School Dist.*, 361 U.S. 376, 385, 80 S.Ct. 474, 480, 4 L.Ed.2d 384 (1960); accord, *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 51, 93 S.Ct. 1278, 1305, 36 L.Ed.2d 16 (1973). The provision "does not offend the Constitution simply because the classification 'is not made with mathematical nicety . . . .' " *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). *Vance v. Bradley, supra*, 440 U.S. at 108, 99 S.Ct. at 948 (footnote omitted). Thus, although involuntary deportation under government guard might sometimes cost more than paying an alien's expenses of voluntary departure, this fact alone is in-

sufficient to overturn the challenged statutes. Congress could logically assume that the statutory scheme would, in most cases, encourage an alien to find some method of paying for his own transportation. Moreover, Congress' apparent decision not to finance voluntary departure in addition to expensive deportation proceedings for serious immigration offenders is well within the range of permissible legislative judgment. For all the foregoing reasons, we find a rational basis for the classifications made in section 1254(e).

V

Barajas–Guillen has failed to show that the laws pursuant to which he was deported in December 1977 violated his constitutional rights. His present conviction for violating 8 U.S.C. § 1326 is therefore affirmed.

AFFIRMED.