**DHL CORPORATION, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent.**

**No. 78–1054.**

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1978.

Nielsen, District Judge, dissented and filed statement.

Peter J. Donnici (argued), San Francisco, Cal., Larry L. Hillblom (argued), Tamuning, Guam, for petitioner.

Thomas L. Ray, Assoc. Gen. Counsel, Civil Aeronautics Board, (argued), Washington, D. C., for respondent.

Before KILKENNY and TRASK, Circuit Judges, and NIELSEN, District Judge.*

---

* The Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation.

KILKENNY, Circuit Judge:

Before us for disposition is the petition of DHL Corporation for a review of the order of the respondent dismissing its application for the issuance of a certificate for all-cargo air service pursuant to the provisions of 49 U.S.C. § 1388. We affirm.

## BACKGROUND

On November 9, 1977, the Federal Aviation Act was amended by adding a new section 418 (49 U.S.C. § 1388), empowering the Board to issue operating certificates, to conduct "all-cargo air service" between the fifty states, Puerto Rico, and the Virgin Islands. This legislation provided, among other things, for the issuance, within sixty days after application, of "Grandfather" Certificates to citizens who had been operating *scheduled* all-cargo service.

Petitioner is an *air freight forwarder,* doing business pursuant to authority granted by the Civil Aeronautics Board under Part 296 of the Board's Economic Regulations, 14 C.F.R. § 296. An "air freight forwarder" is defined to mean an indirect air carrier as defined in § 296.1(e).[1]

Petitioner applied for a Grandfather's Certificate authorizing it to begin providing all-cargo air service under the provisions of § 1388(a)(2). The Board concluded that the Grandfather Certificates could be issued only to direct *air carriers* currently providing scheduled all-cargo service and that the Congress did not intend Grandfather Certificates should be issued to air freight forwarders, which are *indirect air carriers* engaged in the business of consolidating and shipping property to be loaded and transported on direct *air carriers.*

## REGULATORY AND STATUTORY POSTURE

For in excess of forty years, *air carriers* have been subject to precise economic regulation by the Board under the Federal Aviation Act and its predecessor, the Civil Aeronautics Act of 1938. An "air carrier" is defined by the statute, 49 U.S.C. § 1301(3) as "Any citizen of the United States who undertakes, whether directly or indirectly, or by lease or any other arrangement, to engage in air transportation: . . . "[2]

The Board has consistently recognized two distinct kinds of air carriers—direct and indirect. *Monarch Travel Services, Inc. v. Associated Cultural Clubs, Inc.,* 466 F.2d 552 (CA9 1972); *Railway Express Agency, Inc., Certificate of Public Convenience and Necessity,* 2 C.A.B. 531 (1941); *Air Freight Forwarder Case,* 9 C.A.B. 473 (1948), aff'd *sub nom. American Airlines v. C. A. B.,* 178 F.2d 903 (CA7 1949), and *Consolidated Flower Shipments, Inc.—Bay Area v. C. A. B.,* 213 F.2d 814 (CA9 1954). Simply stated, these cases hold that direct air carriers are those who operate aircraft, while indirect air carriers hold out a transportation service to the public under which they utilize the services of a direct carrier for the actual transportation by air; i. e. those persons who procure shipments from shippers, assemble them, and tender the consolidated lot gathered from the various shippers to a direct air carrier for transportation at a bulk rate which is lower than the rates collected by the forwarders from the shippers. Although they carry no merchandise themselves, the forwarders assume the responsibility of a carrier, but ship by air in direct carrier's planes. Upon arrival of the shipment at the airport of destination, the forwarder divides the bulk shipment and distributes the separate portions to the individual consignees. *See American Airlines v. C. A. B., supra,* at 905.

A fundamental regulatory provision of the Act is 49 U.S.C. § 1371(a). It provides

---

1. "(e) 'Indirect air carrier' means any citizen of the United States, who undertakes indirectly to engage in air transportation of property only, and who

    (1) does not engage directly in the operation of aircraft in air transportation, and

    (2) does not engage in air transportation pursuant to any Board order which has been is-

    sued for the purpose of authorizing air express service under a contract with a direct air carrier."

2. "Air transportation" means the carriage by aircraft of persons or property as a common carrier, in interstate or foreign commerce. 49 U.S.C. § 1301(10) and (21).

that no one may operate as an air carrier without first obtaining a certificate of public convenience and necessity from the Board. However, 49 U.S.C. § 1301(3) empowers the Board to relieve air carriers not directly engaged in the operation of aircraft from the regulatory provisions of the Act. It was under the authority of this provision and 49 U.S.C. § 1386(a) that the Board proceeded to establish just and reasonable classifications of groups of air carriers for purposes of the Act. 14 C.F.R. § 296 was promulgated to implement the provisions of this legislation. § 296.2 established a class of "indirect air carriers" which included "air freight forwarders." 14 C.F.R. § 296.-11 provides, among other things, that "*air freight forwarders and international air forwarders* are hereby relieved from all" of the Act's economic regulatory provisions (with stated exceptions not here applicable). 14 C.F.R. § 296 for all intents and purposes gave an absolute freedom of entry into air transportation to those who were in the freight forwarding business under the regulation. *Air Freight Forwarder case, supra,* at 499–500; *ABC Air Freight Co. v. C. A. B.,* 391 F.2d 295, 301 (CA2 1968).

Not to be overlooked is the fact that Congress granted exemption authority to the Board under § 1386(b), as well as the classification power granted under § 1386(a). 14 C.F.R. § 298, which was promulgated pursuant to this authority, deals with classifications and exemptions of "air taxi operators." § 298.3 creates "a classification of air carriers, designated as 'air taxi

operators' which *directly* engage in the air transportation of persons or property . . . and which . . . do not . . . utilize large aircraft . . . ." Included in the "air taxi" classification are "commuter air carriers" defined as taxi operators performing at least five flights per week between two or more points pursuant to published schedules.

## THE 1977 AMENDMENT, FEDERAL AVIATION ACT, § 418; 49 U.S.C. § 1388(a)(1), (2) AND (b)(1)(A)

The 1977 amendment, 49 U.S.C. § 1388(a)(1) and (2) added two grandfather provisions to the existing legislation.

§ 1388(a)(1) provides that holders of a certificate of necessity issued under § 1371(d)(1) who provided scheduled all-cargo service between January 1st and November 9, 1977 [the date of enactment] may, within 45 days of enactment, apply for a certificate to provide all-cargo service.[3]

Another grandfather provision is contained in 49 U.S.C. § 1388(a)(2). It is this provision which appellant believes supports its position. The provision permits, within 45 days of enactment, an application for an all-cargo certificate by a U.S. citizen "[which] operates pursuant to an exemption granted by the Board under 49 U.S.C. § 1386," and which "provided scheduled all-cargo service continuously . . . during the twelve-month period ending on November 9, 1977."[4]

Under 49 U.S.C. § 1388(b)(1)(A) the Board is directed to issue a Grandfather's

3. "49 U.S.C. § 1388. *Certificate for all-cargo air service Application*
  (a)(1) Any citizen of the United States who has a valid certificate issued under section 1371(d)(1) of this title and who provided scheduled all-cargo air service at any time during the period from January 1, 1977, through November 9, 1977, may, during the forty-five-day period which begins on November 9, 1977, submit an application to the Board for a certificate under this section to provide all-cargo air service. Such application shall contain such information and be in such form as the Board shall by regulation require."

4. "49 U.S.C. § 1388(a) *Certificate for all-cargo air service Application*
  * * * * * *

(2) Any citizen of the United States who (A) operates pursuant to an exemption granted by the Board under section 1386 of this title, *and (B) provided scheduled all-cargo air service continuously (other than for interruptions caused by labor disputes) during the 12-month period ending on November 9, 1977,* or whose predecessor in interest provided such service during such period, may, during the forty-five-day period which begins on November 9, 1977, submit an application to the Board for a certificate under this section to provide all-cargo air service. Such application shall contain such information and be in such form as the Board shall by regulation require." [Emphasis supplied.]

Certificate not later than sixty days after submission of the application under either § 1388(a)(1) or (2).[5]

At the outset, we observe that the petitioner holds no certificate under 49 U.S.C. § 1371 [Section 401 of the Federal Aviation Act]. Thus, the first of the two Grandfather Clauses previously mentioned has no application whatsoever. If petitioner is entitled to a certificate, it must fall within the language of the second provision.

To obtain a certificate under the second Grandfather Clause, 49 U.S.C. § 1388(a)(2), an applicant must meet two requirements: (1) the applicant is required to operate pursuant to an exemption granted by the Board under 49 U.S.C. § 1386(b); and (2) the all-cargo service it afforded during the twelve months before enactment of the 1977 amendment, must have been *scheduled.* We hold that petitioner fails to meet either requirement.

The Board concedes that DHL operates under an exemption granted to freight forwarders under 14 C.F.R. § 296.11 of the Board's Economic Regulations, but forcefully argues that such exemption was not granted pursuant to 49 U.S.C. § 1386, the original classification and exemption statute. The parties agree that a statutory source of 14 C.F.R. § 296.11 and its predecessors is 49 U.S.C. § 1301(3), which provides, among other things, that the Board may by order relieve air carriers who are not directly engaged in the operation of aircraft in air transportation from the provisions of the Act, including the Act's certificate of necessity requirement. The authorities support this view. *Air Freight Forwarder case, supra,* 9 C.A.B. at 499, 512; *ABC Air Freight Co. v. C. A. B., supra,* 391 F.2d at 296.

The Board has never made findings in favor of air freight forwarders as required for a § 1386(b) exemption. (See Appendix A). For that matter, under part 296 C.F.R.

the Board cites as its authority for the regulations: §§ 101(3), 204(a) and 416(a) of the Federal Aviation Act of 1958, as amended [49 U.S.C. §§ 1301(3), 1324(a), and 1386(a)]. Of significance is the fact that the Board in promulgating the regulations specifically mentioned 49 U.S.C. § 1386(a), the classification section, and made no mention whatsoever of subdivision (b), the exemption section upon which the petitioner relies.

We must assume that the Congress, when speaking in 1977 of the § 1386(b) exemption, was aware of the decision in *Hughes Air Corp. v. C. A. B.,* 160 U.S.App.D.C. 301, 492 F.2d 567 (1973), where the court in passing on the Board's regulations said:

> *"In order to exempt a class of carriers from any of the regulatory requirements deriving from the Federal Aviation Act, the Board must find that enforcement would be (1) 'an undue burden' on the class to be exempted because of the 'limited extent' of the class's operations, or because of 'unusual circumstances' affecting its operations, and (2) not in the 'public interest.'* Since exemption cannot be in the public interest unless the end that it is calculated to achieve is in the public interest, and we have already set forth the Board's purpose in exempting larger air taxi operations than heretofore, we begin with an examination of this finding." 160 U.S.App.D.C. at 305, 492 F.2d at 571. [Emphasis supplied.]

As previously stated, no such exemption has ever been declared in favor of air freight forwarders and none of the required findings have been made in favor of this classification.

The fact that the order of dismissal on this appeal states that "both air taxis and air freight forwarders operate under § 416 exemption authority" does not demonstrate that the Board in this case was of the belief that the petitioner was covered by that

5. "(b)(1)(A) Not later than sixty days after any application is submitted pursuant to paragraphs (1) or (2) of subsection (a) of this section, the Board shall issue a certificate under this section authorizing the all-cargo air service covered by the application."

section. To the extent that the Board's statement or finding goes beyond a reference to the § 416(a) classification power, it is clearly erroneous.

The Board's conclusions in *Hughes Air Corp., supra,* provides sufficient findings to allow air taxi operators a § 1386(b) exemption. Significantly, there is no claim by petitioner that it was actually operating under a 49 U.S.C. § 1386(b) exemption certificate or that the Board ever held a hearing or made findings in its favor as required by the section.

Moreover, the language in § 296.11 states that air freight forwarders "are hereby relieved" from the provisions of this Act. § 1301(3), the statutory authority for § 296, uses the phrase "may by order relieve." § 298.11, the exemption section for air taxi operators, uses the language "are exempt" which coincides with the phrase in § 1386(b), "may exempt." This provides a strong indication that the exemption granted petitioner by § 296.11 was pursuant to the authority of 49 U.S.C. § 1301(3), not § 1386(b) upon which petitioner relies. For these reasons, petitioner fails to meet the first requirement of § 1388(a)(2).

The second eligibility requirement for a Grandfather Certificate is that the applicant shall have been engaged in *scheduled all-cargo service.* While petitioner devotes almost all of its efforts to establishing that it was engaged in all-cargo service throughout the Grandfather period, it bypasses the statute's requirement that the service shall have been "scheduled." 14 C.F.R. § 298.-2(u) defines "scheduled service" to mean:

"(u) . . . [T]ransport service operated over routes pursuant to published flight schedules, or pursuant to mail contracts with the U.S. Postal Service." [Emphasis supplied.]

Air freight forwarders do not provide any such service. For that matter, it would seem that as consolidators of shipments, it would be practically impossible to provide such a schedule. We conclude that "scheduled" all-cargo service means what it says.

That is, a service performed pursuant to a published list of regular departure or arrival times. There is nothing in petitioner's application, in its motion, or in its argument which suggests that it provides or publishes "scheduled" all-cargo service.

## LEGISLATIVE HISTORY

The legislative history of the § 1388 amendments clearly supports the interpretation placed thereon by the Board. We quote from Senator Cannon's comments on the floor of the Senate.

"The amendment will permit U.S. all-cargo carriers such as Flying Tiger Line, Federal Express, Seaboard World, Airlift International, and other small air taxi firms to obtain, within 45 days, certificates to operate all-cargo services to any point within the United States. . . ." 123 Cong.Rec. S. 17534 (daily ed. Oct. 20, 1977).

Of significance is the fact that no mention whatsoever is made of air freight forwarders in the Senator's remarks.

Fully supporting Senator Cannon's comments are those of Representative Anderson.

" . . . the Board would be required to issue all-cargo certificates to applicants who have operated all-cargo service as a *certificated scheduled airline.* This includes carriers holding scheduled all-cargo certificates—such as Flying Tiger—and carriers holding certificates authorizing scheduled passenger and cargo service—such as American and United—but only if these carriers operated service with all-cargo aircraft from January 1, 1977, through date of enactment. Certificates would also be issued to *commuter airlines* who have provided *scheduled all-cargo service* during the 12-months prior to the enactment." 123 Cong.Rec. H. 12044 (daily ed. Nov. 2, 1977). [Emphasis supplied.]

Again, there is nothing in the Congressman's remarks which would even remotely

suggest that air freight forwarders would be covered by the Grandfather Clauses.

Additionally, Representative AuCoin intimated that Grandfather Certificates were to be issued only to *direct air carriers* by saying: " . . . supplemental airlines— are excluded from the Grandfather provision provided for scheduled and commuter airlines." 123 Cong.Rec. H. 12049 (daily ed. Nov. 2, 1977). That the Board in its interpretation and construction of the legislation was faithful to the legislative intent is fully borne out by the conference report of both Houses, which specifically refers to the Grandfather Clauses. We quote therefrom:

"A new section 418 is added to the Act establishing certificates for all-cargo air service. One hundred five days after the date of the enactment of the new section the Board is required to award all-cargo certificates *to any air carrier who holds a certificate under section 401(d)(1) of the Act* and has provided *scheduled interstate all-cargo air service at any time between January 1, 1977 and the date of enactment.* During the same time period, the Board is also required to award certificates for all-cargo air service to *commuter air carriers* who have provided *scheduled all-cargo air service* continuously during the 12-month period preceding the date of enactment." [H.Conf.Rep. No. 95–773, 95th Cong., 1st Sess., 13, Reprinted in [1977] U.S.Code Cong. & Admin. News, pp. 3396, 3399.] [Emphasis supplied.]

In passing, we observe the significant emphasis placed on the phrases "scheduled airline," "scheduled all-cargo service," "scheduled interstate all-cargo air service," and "scheduled all-cargo air service," by the congressional sponsors of the legislation and in the conference report of both Houses. The identical phraseology used by the sponsors is incorporated in the legislation. For us to ignore this congressional declaration of intent would be nothing short of judicial arrogance.

The legislative history is crystal clear. The Grandfather Clauses were intended for certified air carriers and air taxis including commuter air carriers, with scheduled air service, all of whom are by definition direct carriers.

## PETITIONER'S CONTENTIONS

Petitioner argues that the construction placed on the legislation by the Board is inconsistent with the congressional purpose in providing a truly competitive all-cargo business. However, the record makes it rather clear that the *immediate* concern of Congress was protecting existing direct carriers. No doubt, it was the intention of Congress to create a fully competitive all-cargo business, but only after November, 1978. See 49 U.S.C. § 1388(a)(4), as amended March 14, 1978, U.S.C.A., June, 1978, Supp. 1, which would permit the petitioner to apply for a certificate at any time after November 9, 1978. The purpose of delaying an immediate total deregulation is explained by Representative Anderson in his comment:

"The deregulation of all-cargo transportation would be phased to give existing operators, who have invested in reliance upon the existing system, an opportunity to adjust their fares and marketing approach to an unregulated system." 123 Cong.Rec. H. 12044 (daily ed. Nov. 2, 1977).

*Patagonia Corp. v. Board of Governors of Federal Reserve System,* 517 F.2d 803 (CA9 1975), upon which petitioner relies, does not support its position. Petitioner argues that the Board's interpretation of the legislation and reliance upon its legislative history violate the *Patagonia* principles of statutory construction. We disagree. *Patagonia* recognizes that the courts must accord great weight to the interpretation given a statute by an agency charged with the statute's administration, particularly when the statute is *relatively new* and the agency's officers played an important role in the statute's drafting and consideration. It is only when there are compelling indications that the administrative interpretation was

wrong that the courts do not defer to the agency's interpretation. In *Patagonia,* the court found that the language of the statute itself provided a compelling indication that the Board's position was mistaken and that its view found no support in the pertinent legislative history. *Patagonia* at 812. Here, as we have shown, the precise opposite is true. The Board's position is fully supported by the statutory language and legislative history of § 1388.

Petitioner would have us believe that the phrases "all-cargo air service" and "interstate air transportation" are identical. Although the latter includes the former, it also includes all other methods of interstate carriage, such as passenger and combined passenger-property service and charter cargo service. See 49 U.S.C. § 1301(21). To follow petitioner's reasoning, we would be compelled to hold that all persons engaged in "interstate air transportation" of property—direct or indirect, scheduled or unscheduled, would be entitled to a Grandfather's Certificate. This construction would lead to an "absurd result." In making this type of an argument, petitioner entirely overlooks the fact that the purpose of a Grandfather Clause in a licensing statute is to permit the continuation in the same or expanded form of operations *already in existence.* Consequently, petitioner does not qualify. A similar contention was advanced in *Railway Express Agency, supra,* at 531, in support of a Grandfather application under the original Civil Aeronautics Act of 1938. There the statute provided for the issuance of certificates to those who had been operating as "air carriers." Railway Express Agency, an indirect air carrier, applied for a Grandfather's Certificate, but the Board denied the application finding that Congress did not intend to make indirect air carriers eligible for Grandfather Certificates even though they were, by statutory definition, air carriers.

Other authorities and contentions of the petitioner have received our attention. We find them without merit.

## CONCLUSION

Petitioner's petition must be denied and the judgment of the Board affirmed.

IT IS SO ORDERED.

## APPENDIX A

49 U.S.C. § 1386. *Classification and exemption of carriers*

\*     \*     \*     \*     \*     \*

"(b)(1) The Board, from time to time and to the extent necessary, may (except as provided in paragraph (2) of this subsection) exempt from the requirements of this subchapter or any provision thereof, or any rule, regulation, term, condition, or limitation prescribed thereunder, any air carrier or class of air carriers, if it finds that the enforcement of this subchapter or such provision, or such rule, regulation, term, condition, or limitation is or would be an undue burden on such air carrier or class of air carriers by reason of the limited extent of, or unusual circumstances affecting, the operations of such air carrier or class of air carriers and is not in the public interest."

NIELSEN, District Judge, dissenting:

I respectfully dissent.

I believe the order should be reversed and the Board directed to issue the requested certificate.

The sole issue on appeal is whether the Board properly construed 49 U.S.C. § 1388. It is my conclusion that the Board's reliance on legislative history to alter the plain language of the state was wholly unwarranted and resulted in an unjustified re-writing of the section.