Bautista CASTILLO–FELIX, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 78–1445.

United States Court of Appeals, Ninth Circuit.

July 30, 1979.

Dennis W. Eller (argued), Puget Sound Legal Asst. Foundation, Tacoma, Wash., for petitioner.

Philip Wilens, Dept. of Justice, Eric A. Fisher (argued), Crim. Div. No. 838, Washington, D. C., for respondent.

Before WRIGHT and ANDERSON, Circuit Judges, and TAKASUGI, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Castillo-Felix petitions for review of a Board of Immigration Appeals (BIA) order denying him discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1976). He asserts that the Board incorrectly interpreted the statutory phrase "lawful unrelinquished domicile." We affirm.

## FACTS

Petitioner, a citizen and native of Mexico, illegally entered this country in 1963. Shortly thereafter, he commenced a common law relationship with a woman alien who had been admitted for permanent residence.[1] They now have five children, all born in the United States.

Petitioner was apprehended by the Immigration and Naturalization Service (INS) in November, 1969, and was given leave to depart voluntarily, at government expense, in lieu of deportation. 8 U.S.C. § 1252(g) (1976). He left the country for one day, then illegally returned.

In October 1970, petitioner married his common law wife. He was apprehended the same year and again was granted voluntary departure, this time at his own expense. He remained in this country, however, because the INS proceeded to grant him a series of extensions of his voluntary departure date pending his receipt of a permanent resident visa. The visa was granted and he lawfully entered this country on April 7, 1972.

In August of 1975, petitioner was convicted of knowingly inducing the entry of two illegal aliens into the United States. 8 U.S.C. § 1324(a)(4) (1976).[2] He began serving two consecutive three-year terms[3] and the INS commenced deportation proceedings.

In those proceedings, petitioner conceded deportability but applied for discretionary relief under § 1182(c). In June of 1977, the Immigration Judge denied the requested relief because petitioner had not been continuously domiciled in this country for seven years subsequent to his admission for permanent residence in 1972. The judge added that, even if petitioner had met the domicile requirement, he would exercise his discretion to deny relief.[4]

The BIA affirmed the judge's decision on the statutory ineligibility ground alone. It

* Of the Central District of California.

1. Petitioner's spouse was admitted for permanent residence following her marriage to a United States citizen in 1963. She divorced her first husband in 1964.

2. Petitioner was also convicted of aiding and abetting the counterfeiting of alien registration receipt cards, 18 U.S.C. § 1426(a) (1976), but those counts were reversed on appeal to this court because of insufficient proof that the criminal acts occurred in the United States. *United States v. Castillo-Felix*, 539 F.2d 9 (9th Cir. 1976).

Petitioner's spouse was also convicted of selling and disposing of a counterfeit alien registration receipt card to an alien, knowing it to be false. She was sentenced to 18 months in prison and served one year.

3. Petitioner served approximately one year of his sentence.

4. In his oral opinion, the judge noted that petitioner was not eligible for voluntary departure because of his incarceration for more than six months within the last five years, which precluded him from establishing good moral character. The judge stated:

[B]ecause of his restraint since August of 1975, he is unable to establish to me that he has rehabilitated himself. Therefore, I do not feel that at this point he is a good risk . . . .

declined to address whether the Immigration Judge could have properly exercised his discretion to deny relief.

## DISCUSSION

Aliens who seek admission may be excluded if they fall within any of the categories enumerated in 8 U.S.C. § 1182(a). Section 1182(c) waives the exclusion provisions for certain aliens with established roots in this country. It provides in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)–(25), (30), and (31) of subsection (a) of this section.

8 U.S.C. § 1182(c) (1976). Although originally applicable only to exclusion proceedings, § 1182(c) has been extended to deportation proceedings when deportees meet the requirements of the statute.[5]

According to the literal language of this provision, it applies only to aliens who are (1) "lawfully admitted for permanent residence," (2) returning to a "lawful unrelinquished domicile of seven consecutive years," and who (3) "temporarily proceeded abroad voluntarily and not under an order of deportation."

■ Petitioner concededly meets the first requirement. He was lawfully admitted for permanent residence in 1972. The third requirement, actual departure, was not addressed below, and we cannot reach it here.[6] The BIA found petitioner ineligible for relief because he failed to meet the second requirement, returning to a lawful unrelinquished domicile of seven consecutive years.

### LAWFUL UNRELINQUISHED DOMICILE:

The INS maintains that an alien cannot be lawfully domiciled in this country unless

---

**5.** Three rationales have been used to extend § 1182(c) relief to deportation proceedings. Aliens who committed deportable offenses, then left the United States but were not excluded upon returning, could request § 1182(c) relief "nunc pro tunc." The INS reasoned that the discretionary relief which would have been available to them on reentry could be granted at the later deportation hearing. E. g., Matter of Tanori, Interim Decision # 2467 (BIA 1976); Matter of S, 5 I&N Dec. 392 (BIA 1954).

Alternatively, aliens eligible for voluntary departure in lieu of deportation could obtain advance determinations of their eligibility for § 1182(c) relief, to apply to their future reentry. See Matter of Anwo, Interim Decision # 2604 (BIA 1977), affirmed sub nom. Anwo v. INS, No. 77-1879 (D.C.Cir. June 19, 1979); Matter of S, 1 I&N Dec. 116 (BIA 1953).

Finally, the INS allowed deportees to apply for § 1182(c) relief in connection with an application for adjustment of status, reasoning that aliens applying for adjustment of status stand in the same position as those entering this country with a permanent resident visa. Matter of Smith, Interim Decision # 1510 (BIA 1965).

**6.** The BIA did not base its decision on failure to meet the actual departure requirement, but on petitioner's failure to accumulate seven years of consecutive domicile in this country after his admission for permanent residence. It is well-established that "an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.'" FPC v. Texaco, Inc., 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974), quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), and citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

Consequently, we need not resolve an apparent conflict between this circuit and the Second Circuit. In Francis v. INS, 532 F.2d 268 (2d Cir. 1976), the Second Circuit ruled that the nunc pro tunc extension of § 1182(c) (see note 5, supra) violated equal protection. The court held that it was irrational to extend § 1182(c) relief to deportees who had fortuitously departed after committing a deportable offense, but deny it to deportees who had not. The INS acquiesced in the Francis ruling and no longer requires actual departure by deportees requesting § 1182(c) relief. Matter of Silva, Interim Decision # 2532 (BIA 1976).

This circuit, however, continues to recognize the actual departure requirement. Arias-Uribe v. INS, 466 F.2d 1198 (9th Cir. 1972); followed in Nicholas v. INS, 590 F.2d 802 (9th Cir. 1979); Dunn v. INS, 499 F.2d 856, 857–8 (9th Cir. 1974), cert. denied, 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 801 (1975). Under this line of cases, petitioner would fail to qualify for § 1182(c) relief because he did not depart the country after committing the offense for which he is being deported.

"lawfully admitted for permanent residence." It has consistently applied § 1182(c) only to aliens domiciled in this country for seven or more years *after* their admission for permanent residence. *Matter of Anwo,* Interim Decision # 2604 (BIA 1977), *affirmed sub nom. Anwo v. INS,* No. 77–1879 (D.C.Cir. June 19, 1979); [7] *Matter of S,* 5 I&N Dec. 116 (BIA 1953).

Petitioner argues that aliens may be lawfully domiciled in this country without having been admitted for permanent residence. In his view, because admission for permanent residence is separate from the lawful domicile requirement, aliens who have lived here lawfully for seven or more consecutive years can obtain § 1182(c) relief, regardless of when they were admitted for permanent residence.

He relies primarily on *Lok v. INS,* 548 F.2d 37 (2d Cir. 1977), in which the Second Circuit rejected the INS interpretation of § 1182(c). The INS argues that *Lok* was wrongly decided.

The *Lok* court first examined the language of § 1182(c). It noted that "admission for permanent residence" is carefully defined,[8] but "lawful unrelinquished domicile" is not defined anywhere in the Act. It also noted that some nonimmigrant aliens may be lawfully domiciled in this country without having been admitted for permanent residence. From these facts, it reasoned that lawful domicile could not be equated with admission for permanent residence.

The court then examined the legislative history of § 1182(c), which is an amended version of the 7th Proviso to § 3 of the Immigration Act of 1917. That Proviso reads:

[A]liens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe:

.    .    .    .    .

Act of Feb. 5, 1917, ch. 29, § 3, 39 Stat. 878.

The 7th Proviso gave the Secretary virtually unfettered discretion to grant relief to long-time resident aliens returning to the United States after a temporary absence. In the amended version, § 1182(c), Congress clearly limited that discretion by adding new requirements: that the aliens be (1) lawfully admitted for permanent residence, and (2) returning to a *lawful* unrelinquished domicile of seven consecutive years.

The *Lok* court concluded that Congress did not intend the seven years of lawful domicile to follow admission for permanent residence. The court noted that the Senate Judiciary Committee apparently rejected a version of § 1182(c) which would have explicitly required accumulation of the seven years of domicile after admission for permanent residence.[9] It also pointed to other

---

**7.** In *Matter of Anwo,* the BIA denied § 1182(c) relief on two grounds: (1) petitioner had not accumulated seven years of consecutive domicile after his admission for permanent residence and (2) even if he could have accumulated the seven years of lawful domicile before his admission for permanent residence, he had not done so. Anwo argued for the same interpretation of § 1182(c) that Castillo-Felix advocates here.

On appeal in *Anwo v. INS,* the court did not reach the first ground for denial of relief, but affirmed on the second ground, finding that as a nonimmigrant student, Anwo could not have met the domicile requirement under either interpretation of § 1182(c).

In this case, it is also unlikely that Castillo-Felix would be eligible for relief even if we adopted his interpretation of the statute. We cannot affirm on this ground, however, because

that was not an alternative ground for the decision below. *See SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); note 6 *supra.*

**8.** The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

8 U.S.C. § 1101(a)(20) (1976).

**9.** The Judiciary Committee Report stated:

The suggestion was made that if the words "established after a lawful entry for permanent residence" were inserted in the seventh proviso to qualify the domicile of the alien it would effectively eliminate practically all of the objectionable features, and at the same

provisions of the act in which Congress clearly expressed its intention that a period of domicile follow admission for permanent residence, *e.g.*, 8 U.S.C. §§ 1427(a)(1), 1430(a) (1976), and reasoned that Congress would have done so here, had it intended that result.

The *Lok* court acknowledged that interpretations of an Act by the agency responsible for administering it are usually accorded great deference, citing *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Nevertheless, it reversed the agency, impelled by a

> heavy responsibility to set aside administrative decisions that are inconsistent with a statutory mandate or which frustrate the congressional policy underlying legislation, *see N. L. R. B. v. Brown*, 380 U.S. 278, 290–92, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965).

548 F.2d at 40. We cannot agree that the INS interpretation of § 1182(c) is "inconsistent with a statutory mandate or . . . frustrate[s] the congressional policy" behind this legislation.

The statutory mandate in § 1182(c) is ambiguous. The language of the section could support either the INS interpretation or that adopted in *Lok.* The fact that the phrase "lawfully admitted for permanent residence" is carefully defined elsewhere in the act does not negate the possibility that Congress intended to establish permanent

resident status as the prerequisite for "lawful" domicile.

Similarly, the fact that a small group of nonimmigrants could conceivably qualify as "lawfully" domiciled within this country without acquiring permanent resident status does not persuade us that "lawful" should be defined without reference to the phrase "lawfully admitted for permanent residence."

■■■ We emphasize first that most nonimmigrants must have a residence in a foreign country which they do not intend to abandon, or must be here for a temporary purpose, or both.[10] To establish domicile,[11] aliens must not only be physically present here, but must intend to remain. If aliens are here for a temporary purpose, they cannot establish domicile. Conversely, if they intend to stay, they violate the terms of their admission and are no longer here lawfully. *See Anwo v. INS,* No. 77–1879, slip op. at 6–7 and n.8 (D.C.Cir. June 19, 1979), quoting *Elkins v. Moreno,* 435 U.S. 647, 98 S.Ct. 1338, 1349, 55 L.Ed.2d 614 (1978).

The INS concedes that a small group of nonimmigrants including diplomats, foreign government representatives and their retinues, treaty traders, and media representatives,[12] are not required to maintain a foreign residence, and may be here for other than temporary purposes.

---

> time the Attorney General would be left with sufficient discretionary authority to admit any lawfully resident aliens returning from a temporary visit abroad to a lawful domicile of seven consecutive years.

S.Rep.No.1515, 81st Cong., 2d Sess. 384 (1950). The suggested language did not appear in the final version of the statute.

**10.** The *Lok* court cited alien students as an example of nonimmigrants who could lawfully be domiciled in the United States without acquiring permanent resident visas. 548 F.2d at 40. Yet the Act describes a nonimmigrant student as:

> an alien having a *residence in a foreign country which he has no intention of abandoning,* who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States *temporarily* and *solely for the purpose of pursuing such a course of study* at an established institution of learning

> or other recognized place of study in the United States . . . . .

8 U.S.C. § 1101(a)(15)(F)(i) (1976) (emphasis added).

**11.** The statute does not define "domicile" but incorporates the concept "familiar in other areas of law." 2 Gordon & Rosenfield, *Immigration Law and Procedure,* § 7.4b at 7–32 (1979).

> In *Anwo v. INS,* No. 77–1879, slip op. at 5 (D.C.Cir. June 19, 1979), the court stated:
>
> > Although the word "domicile" is nowhere defined in the Immigration & Nationality Act, it is generally accepted that domicile is not established unless an individual intends to reside permanently or indefinitely in the new location.

**12.** 8 U.S.C. § 1101(a)(15)(A)(E)(G)(I) (1976).

It is not reasonable to conclude, however, that by using the term "lawful unrelinquished domicile" in the same statute with the phrase "lawfully admitted for permanent residence," Congress intended to benefit only this small and rather exclusive group of nonimmigrants in addition to aliens with permanent resident visas.[13] Such an interpretation strains the language of the statute. Had Congress intended that result, it would have said so more clearly.

The *Lok* court found support for its conclusion in the Senate Judiciary Committee's apparent rejection of language which would have clearly required admission for permanent residence before establishment of lawful domicile. Unfortunately, we can only speculate about the Committee members' reasons for not including this language. They might have considered it superfluous, believing that the enacted version adequately conveyed their intent that admission for permanent residence precede the seven years of domicile.

We are left with an ambiguous provision with little legislative history to clarify how Congress intended it to be applied. The INS, the agency charged with interpreting the immigration laws,[14] first interpreted § 1182(c) in 1953[15] and has adhered to its position for 26 years. We stated in

*Baur v. Mathews,* 578 F.2d 228, 233 (9th Cir. 1978):[16]

The administrative agency clothed with responsibility for implementing congressional pronouncements is generally well acquainted with the policy of the statute it administers. This is particularly true when the agency has long been involved in the construction and administration of a given statute or its predecessors. Where, as here, the agency has extensive experience, has relied on the common meaning of the relevant statute's specific language, and can point to important congressional purposes furthered by its interpretation, only a clear showing of a contrary intent by Congress will justify overruling the agency's regulations.

*See also DHL Corp. v. C. A. B.,* 584 F.2d 914, 919–20 (9th Cir. 1978); *Nazareno v. Attorney General of United States,* 168 U.S. App.D.C. 22, 26, 512 F.2d 936, 940 (1975).

In *Matter of Anwo,* Interim Decision # 2604 (BIA 1977), *affirmed sub. nom. Anwo v. INS,* No. 77–1879 (D.C.Cir. June 19, 1979), the BIA set forth the "important congressional purposes furthered by its interpretation." It acknowledged that the 7th Proviso, the predecessor to § 1182(c), is a humanitarian statute designed to mitigate the harsh effects of the immigration laws.

13. In *Matter of Anwo,* Interim Decision # 2604 at 5–6 (BIA 1977), *affirmed sub nom. Anwo v. INS,* No. 77–1879 (D.C.Cir. June 19, 1979) the BIA discussed the difference between nonimmigrants and aliens admitted for permanent residence.

The lawful permanent resident has met extensive quantitative and qualitative standards at time of entry as an immigrant. He has, legally and properly, established ties to this country. He may work. He normally looks toward citizenship and will have that privilege in time. He enjoys greater rights than the nonimmigrant alien and assumes commensurate responsibilities and duties. It is reasonable that after seven years of such lawful resident status the Congress intended he should not lightly be held barred from continuing in that status under the exclusionary provisions of the statute.

On the other hand, the statutory scheme clearly reflects an entirely different view of the nonimmigrant. He has none of the foregoing attributes. He is expected to enter, accomplish the purpose of his visit and to leave within a relatively short period of time. It is not reasonable to believe that the Congress visualized him as remaining here for years, until such time as he could achieve lawful permanent residence, and thus qualify for benefits of section 212(c) [8 U.S.C. § 1182(c)].

14. The act actually charges the Attorney General with the administration and enforcement of the immigration laws, 8 U.S.C. § 1103(a), however, the Attorney General has delegated much of that authority to the Commissioner of the INS pursuant to 8 U.S.C. § 1103(b).

15. *Matter of S,* 5 I&N Dec. 116 (BIA 1953).

16. In *Baur,* the agency's interpretation of the statute was set forth in a regulation. Here, it was done in an adjudicative proceeding. The manner in which the interpretation was announced here does not alter the weight it should be given.

Such a provision is normally read liberally to effectuate its ameliorative purpose. *Wadman v. INS*, 329 F.2d 812 (9th Cir. 1964). The BIA stresses, however, that Congress enacted § 1182(c) primarily to limit the class of aliens eligible for relief,[17] and in fact considered deleting the provision entirely.[18] It asserted that its interpretation furthers Congress' restrictive intent.

The BIA also cautioned, in *Matter of Anwo*, against adopting an interpretation of § 1182(c) that will undermine other provisions of the Act, particularly § 1254(a) dealing with relief from deportation.[19] It stated:

> Suspension of deportation under section 244(a) [8 U.S.C. § 1254(a)] of the Act is potentially available to the class of aliens, whether in illegal, nonimmigrant, or resident status, who satisfy the seven or ten-year United States residence requirements. However, the applicant for section 244(a) relief must also meet strict qualitative requirements. He must establish that he has been a person of good

moral character throughout the statutory period. He must establish that his deportation would cause an extreme degree of hardship to himself or to specified relatives who are United States citizens or lawful permanent residents. In short, whether the applicant is illegal, a nonimmigrant, or a lawful permanent resident, his mere residence in the United States for a period of seven or ten years will not entitle him to relief from deportation.

By contrast, section 212(c) [8 U.S.C. § 1182(c)] imposes no strict standards which must be met before an applicant is able to escape deportation. The alien applying for section 212(c) relief has only to show that he is a lawful permanent resident and that he has maintained a "lawful unrelinquished domicile" in the United States for a period of seven consecutive years. In light of the lesser standards which must be met before relief from deportation can be accorded under section 212(c), the class of aliens to which it applies must therefore be distinct from, and possess a stronger rela-

---

**17.** This was certainly how the dissenting members of the Senate Judiciary Committee viewed the provision. They stated:

> Section 212(c) [8 U.S.C. § 1182(c)] which, by severely limiting the present discretion of the Attorney General to readmit aliens with an unrelinquished American domicile of seven consecutive years, would require the permanent exclusion of aliens who had voluntarily and temporarily proceeded abroad, even though they could not have been deported had they remained in the country; . . . .

S.Rep.No.1137, 82nd Cong., 2d Sess. 10 (1952).

**18.** It has been pointed out that the seventh proviso should be abolished as it is instrumental in demoralizing the Immigration and Naturalization Service and assisting the bad alien to remain in the United States, while at the same time it keeps out the potential good and law-abiding citizen.

S.Rep.No.1515, 81st Cong., 2d Sess. 384 (1950).

**19.** That section provides:

> (a) Adjustment of status for permanent residence; contents
>
> As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

> (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence; or
>
> (2) is deportable under paragraphs (4), (5), (6), (7), (11), (12), (14), (15), (16), (17), or (18) of section 1251(a) of this title; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a) (1976).

tionship with this country than, the class of aliens eligible for suspension of deportation. Otherwise, the hardship and good moral character requirements of section 244(a) as this section applies to deportable lawful permanent resident aliens would be rendered nugatory. We conclude, therefore, that if the strict standards embodied in section 244(a) are not to be read out of the Act, section 212(c) cannot be interpreted to apply to lawful permanent residents who have not been in such status for a period of seven years.

Interim Decision # 2604 at 7–8.

We cannot agree with the *Lok* court that the INS interpretation of § 1182(c) is "inconsistent with a statutory mandate." The language of the statute and its legislative history are simply inconclusive on this point. Nor do we find that the INS interpretation would "frustrate the congressional policy underlying [the] legislation." *Id.* To the contrary, considering the act as a whole, we find the INS interpretation preserves the ·overall statutory scheme of discretionary relief in deportation.

■ For this reason, and because of the deference which we must give to the INS' longstanding and consistent interpretation, we hold that, to be eligible for § 1182(c) relief, aliens· must accumulate seven years of lawful unrelinquished domicile after their admission for permanent residence.

*EQUAL PROTECTION:*

After the *Lok* decision, the BIA announced that the INS would observe the *Lok* interpretation of § 1182(c) in the Second Circuit. *Matter of Anwo,* Interim Decision # 2604 at 8. Believing that interpretation to be incorrect, however, the BIA added that it would adhere to its own interpretation outside the Second Circuit. *Id.* Petitioner argues that this disparate application of § 182(c) violates the equal protection component of the Fifth Amendment due process clause. *Cf. Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). We disagree.

■ Aliens are entitled to the equal protection of the laws. *Sugarman v. Dougall,* 413 U.S. 634, 641, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973); *Graham v. Richardson,* 403 U.S. 365, 371, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). However, "the right of a permanent resident alien to remain in this country has never been held to be the type of 'fundamental right' which would subject classification touching on it to strict judicial scrutiny, . . . ." *Francis v. INS,* 532 F.2d 268, 272 (2d Cir. 1976). Consequently, the INS has not violated petitioner's equal protection rights if it has a rational basis for its action.

■ The discriminatory effect arising from the agency's decision results entirely from the independence of federal appellate courts. It is elementary that the decisions of one Court of Appeals cannot bind another. The INS is not compelled to obey the *Lok* ruling outside geographical jurisdiction of the Second Circuit.

Although the INS could refuse to adopt the *Lok* interpretation in the Second Circuit and thereby achieve consistency of application, to do so would only invite appeal and reversal. The agency's decision to apply the *Lok* interpretation in the Second Circuit avoids futile appeals, costly to both the agency and to petitioners seeking relief. We find avoidance of this unnecessary process of appeal to be a sound and rational basis for the agency's action. Adherence to the law of the circuit only within that circuit does not violate petitioner's equal protection rights.

The decision of the BIA is affirmed.

TAKASUGI, District Judge, dissenting.

I respectfully dissent.

The majority embraces the interpretation of the Immigration and Naturalization Services (INS) that the seven year residency requirement of § 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c), commences at the time an alien is granted lawful permanent residency, thereby placing this circuit in direct conflict with the Second Circuit, which held in *Lok v. Immigration and Naturalization Service,*

548 F.2d 37 (2d Cir. 1977) that the requisite residency need not have accrued after that time.

As the opinions in *Lok* and the present case aptly point out, the legislative history is shrouded in confusion and uncertainty, challenging the perceptiveness of its examiners. It is, therefore, not surprising that two diametrically opposed conclusions were reached. I, however, am persuaded by the humanitarian aspects and the fact that Congress considered and rejected harsher language.

### I

"Deportation is a sanction which in severity surpasses all but the most Draconian criminal penalties." *Id.* at 39. It is the recognition of the devastating impact which is the genesis of discretionary forms of relief enacted by Congress, including § 212(c). Section 212(c) was enacted "to provide the Attorney General the flexibility and discretion to permit worthy aliens to continue their relationships with family members in the United States despite a ground for exclusion." *Id.* (citation omitted).

The availability of § 212(c) relief, however, was not extended to all aliens. Rather, it was limited to worthy individuals who could establish that they had maintained a residency in this country for a period of seven consecutive years. This residency requirement, which must initially be met before the Attorney General need exercise his discretionary powers, undoubtedly represents a presumption that an alien facing deportation could possibly suffer such a devastating impact so as to justify an examination by the Attorney General. Deportation and its consequences, however, are oblivious to the life situation of an alien. Having come to this country and established their roots into the land, the repercussions of deportation are not diminished by the mere fact that the seven year period follows admittance for permanent residency. Rather, the emotional, familial, and financial repercussions which flow from deportation of those who have settled in this country, touch equally those aliens who were admitted as permanent residents prior to the running of the seven year requirement as well as those aliens who were admitted at some point during the seven year duration.

This reasoning may have prompted Congress to reject harsher language which would have certainly supported the INS's position. In 1950, the Senate Judiciary Committee considered a suggestion which would have limited the availability of the 7th Proviso to section 3 of the Immigration Act of 1917,[1] the precursor to § 212(c), in a manner which would be consistent with the position taken by the respondents. The suggestion to insert the words "established after a lawful entry for permanent residence," was, however, ultimately rejected by the Committee.

Section 212(c) was enacted a few years later, incorporating much of the language in the Seventh Proviso to section 3 of the Immigration Act of 1917. Omitted, however, was any explicit language limiting relief to aliens who had been domiciled in this country for the requisite amount of years after being admitted for permanent residence, despite the fact that such language was considered a few years before. In its place was inserted a cryptic passage defying any inexorable interpretation, leading the court in *Lok* to observe and state that:

> If Congress ultimately had determined that such constriction of the class of aliens entitled to the beneficial considerations under 8 U.S.C. § 1182(c) was warranted, it could have expressed its intention explicitly, as it did on other occasions . . . . The fact that the legislators did not so limit Section 212(c), coupled with the obvious purpose of the statute to mitigate the hardship that deportation poses for those with family ties in this country, impel us to grant the petition.

*Id.* at 41.

I find such reasoning persuasive and supported by the established rule of law that

---

1. See page 462 *supra,* majority opinion.

statutes affecting deportation decisions be construed in favor of the alien, *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948); *Lennon v. Immigration and Naturalization Service*, 527 F.2d 187, 193 (2nd Cir. 1975); *Errico v. Immigration and Naturalization Service*, 349 F.2d 541, 547 n. 3 (9th Cir. 1975). It is my position that the seven year residency requirement need not follow admittance for permanent residency.

I am not convinced otherwise by the Board of Immigration Appeals' ("BIA") argument in *Matter of Anwo*, Interim Decision # 2604 (BIA 1977), *affirmed sub nom. Anwo v. Immigration and Naturalization Service*, No. 77–1879 (D.C.Cir. June 19, 1979), that such an interpretation of the seven year statutory requirement will undermine other provisions of the Immigration and Naturalization Act. The BIA suggests that the provisions of § 244(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1254(a),[2] regarding suspension of deportation, are more stringent than those under § 212(c) because an alien need "only" be a lawful permanent resident and establish a domicile for seven years for § 212(c) relief, whereas § 244(a) requires scrutiny into an alien's moral character and hardship circumstances. Such a view certainly ignores the difficult standard that must be met to even qualify for permanent resident status. For example, pursuant to 8 U.S.C. § 1255, an alien must have been, *inter alia*, previously inspected, admitted or paroled, subjected to the discretion of the Attorney General in addition to being required to

satisfy other procedural requirements. The broad discretionary powers available to the Attorney General in granting lawful permanent residence could, and presumably do, serve a function equal in stringency to the establishment of good moral character and extreme hardship under § 244(a).

Likewise, even if an alien meets the initial requirements for § 212(c) relief, he must still be considered worthy of relief in the discretion of the Attorney General. That this discretionary exercise of power can be used to safeguard the relief process is evident from the facts of this case.

It must also be remembered that § 212(c) originally applied only to excludable aliens who were seeking admission.[3] It was through judicial decision, and not legislative action, that the provisions later became applicable to other classes of aliens. *Lok*, 548 F.2d at 39 n. 1; *Francis v. Immigration and Naturalization Service*, 532 F.2d 268 (2d Cir. 1976); *Matter of G. A.*, 7 I & N Dec. 274 (BIA 1956). Merely because both provisions can be applied to lawful permanent residents does not render the hardship and good moral character requirements nugatory; instead, they can be regarded as repetitious or explanatory of the discretionary powers already available. If there is a question of undermining, it has already occurred with the extension of § 212(c) relief to other classes of aliens. There are no real differences in the standards, but only greater articulation of them in § 244(a).

In view of the similarities between § 244(a) and § 212(c), the current INS posi-

---

**2.** See n. 19 *supra*, majority opinion.

**3.** 8 U.S.C. § 1101(a)(13):

(13) The term "entry means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign

port or place or in an outlying possession was not voluntary: Provided, That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

As an elaboration on the foregoing definition, the theory has been developed that "each time an alien returns to the United States after an absence abroad, his most recent entry is considered controlling for exclusion and expulsion purposes." Hesse, *The Constitutional Status of the Lawfully Admitted Permanent Resident Alien: The Inherent Limits of the Power to Expel*, 69 Yale L.J. 262, 267 (1959).

tion regarding the seven year residency requirement in § 212(c) cases appears unnecessarily harsh. Aliens who can apply for § 244(a) relief need only live in the United States between seven and ten years before relief can be granted. Yet an alien in a position similar to Castillo-Felix, who began establishing roots in this country in 1963, who independently supports his family, has purchased a home, and satisfied government officials in 1972 of his potential as an American citizen, must add seven years to the nine already spent as a productive individual. Such a result is untenable.

A more logical interpretation of the requirement is that an alien with permanent residence status meets the minimum requirements evident in other provisions by having spent *at least* seven years developing ties to this country. This interpretation is strengthened by circumstances which permit aliens to be *immediately* eligible for lawful permanent residence status when, for example, they marry an American citizen, *see e. g., Lok, supra.* Without the seven year requirement, an alien could meet § 212(c) requirements after spending only a short period of time in the United States.[4]

### II

Even an affirmation in *Lok* will not entirely resolve the problem because it is still unclear when the period should run *prior to* attaining lawful permanent resident status. This inquiry is crucial to the present factual situation.[5] The few opinions that have discussed § 212(c) requirements have concentrated on the interpretation of the domiciliary period and the voluntary departure provisions, with little attention paid to the requirement that an alien "[be] lawfully admitted for permanent residence." The phrase, defined in 8 U.S.C. § 1101(a)(20), means the "status of having been lawfully

accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."

As noted in *Matter of Anwo, supra,* at 5–6:

> The lawful permanent resident has met extensive quantitative and qualitative standards at time of entry as an immigrant. He has, legally and properly, established ties to this country. He may work. He normally looks toward citizenship and will have that privilege in time. He enjoys greater rights than the nonimmigrant alien and assumes commensurate responsibilities and duties . . . .

Although nothing in the record indicates the exact circumstances under which Castillo-Felix was granted admission, it will be presumed that any decision allowing an alien to reside permanently in the United States is an administrative task not taken lightly, and that the individual deserves the deference accorded him. An exercise of the discretionary authority vested in the Attorney General in this manner has the effect of transforming an otherwise improper entry into a lawful one. Under the general doctrine of *nunc pro tunc*, this corrective measure applies retroactively to the time of the entry. "Such action, *nunc pro tunc*, amounts to little more than a correction of a record of entry, which is a frequent and indispensable practice in many and varied situations." *Matter of L.,* 1 I & N Dec. 1, 6 (1940); *In re Kempson*, 14 F.2d 668 (D.C. 1926) (court distinguished those aliens that had been inspected and erroneously admitted from those who had never been inspected allowing *nunc pro tunc* relief in the former situation only).

This view that a previous unlawful entry can be corrected retroactively is strength-

---

**4.** Literal reading of § 212(c) mandates a departure from this country before seeking relief. In light of *Francis v. Immigration and Naturalization Service*, 532 F.2d 268 (2d Cir. 1976), in which the Second Circuit held that application of relief to only those aliens who had ventured abroad violated the equal protection clause of the fifth amendment, the viability of such a

requirement in this circuit is questionable. This opinion, however, need not address this point as the BIA did not base its decision on the failure to meet the actual departure requirement.

**5.** This issue was not addressed in the *Lok* decision.

ened by the conceptual tool used in *Kaplan v. Tod*, 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585 (1925) in which an alien who had not been lawfully admitted was "regarded as stopped at the boundary line and kept there unless and until her right to enter should be declared." Even though she was allowed to live in the United States, she "was still in theory of law at the boundary line and had gained no foothold in the United States." *See Yuen Sang Low v. Attorney General of United States*, 479 F.2d 820 (9th Cir. 1973). It follows from this somewhat metaphysical appraisal of the immigration process, coupled with *nunc pro tunc* relief, that when a right to enter is finally declared, the alien retroactively crosses the boundary into the United States and assumes the cloak of legality with all its attendant rights and responsibilities. Going one step further, it follows quite simply that if lawful entry has been made, all the years spent living in the United States subsequent to that time are also made lawful retroactively.

Applying this view to Castillo-Felix, it would appear that upon achieving his status as a lawful permanent resident, his last entry [6] into the United States marks the first day of lawful residency. According to the facts of the case, this was in 1969 after his initial voluntary departure and return.

Having resolved the question of when lawful residency commences for purposes of § 212(c), Castillo-Felix clearly fulfills the residency requirement, having been lawfully domiciled for over seven years. Under § 1101(a)(20), an alien is accorded the status of lawful permanent resident unless his status changes. Until the resolution of deportability of an alien is finalized, an alien

retains his status. In the present case, the decision of deportability was rendered on June 29, 1977, which is over the seven year residency requirement.

Finding that Castillo-Felix is eligible for relief does not of course entitle him to such relief. The Attorney General must exercise his discretion in order to circumvent the deportation order. Accordingly, this case should be remanded to the BIA for further consideration.

---

**6.** The Court in *Leng May Ma v. Barber*, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958) pointed to the long-standing distinction between aliens seeking admission and those already in the United States, irrespective of its legality.

In the latter instance the Court has recognized additional rights and privileges not extended to those in former category who are merely "on the threshold of initial entry." [Citations omitted] . . . Chapter 4 subjects those seeking admission to "exclusion proceedings" to determine whether they "shall be allowed to enter or shall be excluded and deported." 66 Stat. 200, 8 U.S.C. § 1226(a). On the other hand, Chapter 5 concerns itself with aliens who have already entered the United States and are subject to "expulsion," as distinguished from "exclusion," if they fall within certain "general classes of deportable aliens." 66 Stat. 204, 8 U.S.C. § 1251.

*Id.* at 187, 78 S.Ct. at 1073.